OPINION.
{¶ 1} In this appeal, appellants, Robert Mayer, Marcia Mayer, William Mayer, and Mary Beth Mayer, appeal from a March 21, 2002 judgment entry of the Geauga County Court of Common Pleas.
 {¶ 2} The record discloses the following facts. On August 31, 1992, appellants ("sellers") and appellees, A-Custom Builders, Inc., Mario Medancic, Marija Medancic, Mladen Medancic, and Karoline Medancic ("buyers"), entered into a purchase agreement for real estate. Pursuant to the purchase agreement, sellers were to receive $930,000 from buyers in consideration of two parcels of land labeled as 3a and 5a.[1] Parcel 3a was a sub-lot consisting of 1.5 acres of land, and parcel 5a was composed of 164 acres of unsubdivided developmental land.
 {¶ 3} The purchase agreement set forth a payment schedule which required buyers to make payments on specific dates. Following sellers' receipt of a $150,000 down payment, parcel 3a was transferred to buyers. Buyer, Mario Medancic, subsequently constructed his home upon the sub-lot, parcel 3a. Buyers then paid $25,000 toward the first scheduled payment of $50,000. However, buyers experienced financial difficulties and made no further payments. As a result of buyers' inability to pay, the parties entered into a new purchase agreement on June 20, 1996. The new purchase agreement terminated the original purchase agreement and required buyers to pay $865,000 in consideration of the land.
 {¶ 4} When buyers failed to comply with the new purchase agreement's payment schedule, sellers filed three separate foreclosure complaints in the Geauga County Court of Common Pleas. All three complaints sought monetary damages and foreclosure of mortgage. In response to sellers' complaints, buyers counterclaimed against sellers for breach of contract. The trial court ultimately consolidated these claims.
 {¶ 5} Following a bench trial, the trial court issued two separate judgment entries. The judgment entry disposing of buyers' counterclaim was modified by the trial court in a nunc pro tunc judgment entry on October 3, 2000. The October 3, 2000 judgment entry rescinded the portion of the purchase agreement for unsubdivided developmental land and ordered sellers to reimburse buyers for any monies paid for such land. The trial court stated:
 {¶ 6} "Accordingly, the agreements, to the extent that they represent purchase of unsubdivided acreage for development, should be rescinded, and the monies paid therefor in the sum of $148,000 (175,000plus $3,000 paid less $30,000 [for Marion (sic) Medancic's residence]
refunded to A-Custom Builders, Inc., plus interest at ten percnet (sic) (10%) per year from the date of judgment." (Emphasis added.)
 {¶ 7} Buyers previously appealed the October 3, 2000 judgment entry in Mayer v. Medancic (Dec. 21, 2001), 11th Dist. Nos. 2000-G-2311, 2000-G-2312, and 2000-G-2313, 2001 WL 1647119. The pertinent assignment of error stated:
 {¶ 8} "The Court erred in subtracting $30,000.00 from the $178,000.00 due [buyers] from [sellers]." Id. at 3.
 {¶ 9} Buyers failed to submit a transcript of the trial court proceedings with this court, and offered no other evidence demonstrating a mathematical error. Although buyers offered no such evidence, this court, in the interest of justice, reviewed the merits of their claim. Id. at 5. Upon review, we found that the trial court properly rescinded those portions of the purchase agreement regarding the unsubdivided developmental land, and appropriately ordered reimbursement of any monies paid by buyers for such land. Nevertheless, we explained, "for reasons that are not reflected in the [October 3, 2000] judgment entry, the $178,000 paid by [buyers] was reduced by $30,000, for a final total of $148,000. Presumably, the $30,000 represents the amount paid by [buyers] to [sellers] for a sub-lot, while the $178,000 represents the amount paid by buyers to sellers for certain unsubdivided acreage.
 {¶ 10} "Because the foregoing analysis engages in a certain amount of speculation on our part, we choose to refrain from entering judgment on this issue. Instead, we remand this issue to enable the trial court to clarify and specify why it subtracted $30,000 from $178,000, and/or recalculate this award on the counterclaim for breach of contract." Id.
 {¶ 11} Following our decision, the trial court issued a new judgment entry on March 21, 2002. The March 21, 2002 judgment entry added $30,000 to the $148,000 total of the October 3, 2000 judgment entry. The trial court gave no explanation as to why this addition was made.[2]
 {¶ 12} From the March 21, 2002 judgment entry, sellers filed a notice of appeal with this court advancing one assignment of error for our consideration:
 {¶ 13} "The trial court erred in ordering Plaintiffs to pay to Defendant A-Custom Builders the sum of $178,000."
 {¶ 14} Sellers maintain that the manifest weight of the evidence demonstrates that they did not receive $30,000 in consideration of parcel 3a, or an additional $3,000 in consideration of parcel 5a. Thus, sellers conclude that the $178,000 reimbursement sum of the March 21, 2002 judgment entry is incorrect and should be amended so the reimbursement amount totals $145,000.
 {¶ 15} We find sellers' argument regarding the $30,000 addition to be well-taken. For the following reasons we reverse the March 21, 2002 judgment entry, and remand this matter to the trial court to reconsider its reimbursement amount in light of the transcript and this opinion.
 {¶ 16} As an initial matter, we note that a transcript of the trial proceedings was not before the trial court to assist in its recalculation of the October 3, 2000 judgment entry. Usually, on remand the trial court is supplied with a copy of the transcript that was submitted with the appellate court. However, because buyers failed to submit a transcript with this court on the original appeal, the trial court was not provided one upon remand.[3] Therefore, the trial court did not have the benefit of reviewing the transcript to aid in its determination of the March 21, 2002 judgment entry.
 {¶ 17} In the instant appeal, sellers properly submitted a transcript with this court. After reviewing the transcript, we were unable to find any evidence of a $30,000 payment, for parcel 3a, made by buyers in addition to the paid total of $178,000. Furthermore, evidence adduced at trial confirms that the $30,000 purchase price of parcel 3a was included in the $150,000 down payment. Therefore, we find the trial court's addition of $30,000 in its March 21, 2002 judgment entry to be against the manifest weight of the evidence. However, we will forego entering judgment in this respect, and will instead remand this matter so the trial court has the opportunity to reconsider its reimbursement amount and clarify its findings in light of the transcript and this opinion.
 {¶ 18} Prior to discussing our review of appellants' assignment of error, we will set forth the appropriate standard of review. Whether a lower court's judgment is against the manifest weight of the evidence is a factual issue. Buck v. Canacci (Nov. 21, 1997), 11th Dist. No. 96-L-185, 1997 Ohio App. LEXIS 5236, at 5-6. Accordingly, since the trier of fact is in the best position to view the witnesses and their demeanor, this court is mindful that we must indulge every reasonable presumption in favor of the lower court's judgment and findings of fact.Shemo v. Mayfield Hts., 88 Ohio St.3d 7, 2000-Ohio 258.
 {¶ 19} It is well established that "[j]udgments supported by some competent credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, syllabus. In short, "an appellate court may not simply substitute its judgment for that of the trial court so long as there is some competent, credible evidence to support the lower court's findings." State ex rel. Celebrezze v. Environmental Enterprises, Inc.
(1990), 53 Ohio St.3d 147, 154. Thus, in the event that the evidence is reasonably susceptible to more than one interpretation, this court must construe it consistently with the lower court's judgment. Karches v.Cincinnati (1998), 38 Ohio St.3d 12, 19.
 {¶ 20} As stated previously, after reviewing the transcript, we are unable to find any competent, credible evidence that buyers paid an additional $30,000 to sellers in consideration of parcel 3a. Although numerous checks, signed by buyers and made payable to sellers, were properly submitted as exhibits, none of the checks' proceeds appear to be utilized as payment for parcel 3a. Instead, the proceeds apparently were used to pay a variety of expenses such as legal costs, property taxes, soil tests, surveying, landscaping, and in consideration of separate parcels of developed land.
 {¶ 21} Buyers fail to set forth any evidence that they paid $30,000in addition to the $150,000 down payment and partial payments of $25,000 and $3,000. To the contrary, the evidence confirms that buyers were aware that parcel 3a was transferred in consideration of the $150,000 down payment:
 {¶ 22} "Q. [on redirect examination of (buyer) Mladen Medancic]: The $150,000 [down payment], you mentioned that there's a $40,000 check that's not here.
 {¶ 23} "A. Yes.
 {¶ 24} "Q. Did Mr. Mayer [seller] go ahead and proceed with his end of the bargain as soon as you had that $150,000?
 {¶ 25} "A. Yes we gave him collateral.
 {¶ 26} "Q. And what did he do to perform his end?
 {¶ 27} "A. He transferred the lot [parcel 3a] to my dad's [Mario Medancic's] house immediately * * *."
 {¶ 28} Seller, Robert Mayer, testified that buyers made the $150,000 down payment, and that following the payment he transferred parcel 3a to buyer, Mario Medancic:
 {¶ 29} "Q. [on cross-examination of Robert Mayer]: Okay so the $40,000 check that Mladen didn't have here, you admit that you received?
 {¶ 30} "* * *
 {¶ 31} "A. Finally, we received to (sic) $150,000 yes.
 {¶ 32} "* * *
 {¶ 33} "Q. One of the first things you did after this first contract was signed was to turn over a lot for Mario to build a house on, correct?
 {¶ 34} "A. That turned out to be part of the final agreement, that's correct. Part of the agreement in purchasing the property was — that made up the $930,000 correct."
 {¶ 35} The trial court's October 3, 2000 judgment entry made clear that only those portions of the purchase agreement regarding the unsubdivided developmental land of parcel 5a was to be rescinded. Accordingly, seller retained ownership of parcel 5a, while buyers were to be reimbursed for any monies applied toward parcel 5a. The portion of the purchase agreement regarding the parcel 3a sub-lot, however, was not rescinded, and buyer, Mario Medancic, maintained ownership of parcel 3a. Therefore, when the trial court determined the amount to be reimbursed to buyers in its October 3, 2000 judgment entry it appropriately subtracted $30,000, for parcel 3a, from the $178,000 total paid by buyers to sellers.[4] Without this subtraction, buyers would be reimbursed for parcel 3a and retain ownership of this sub-lot for no consideration.
 {¶ 36} Because the portion of the purchase agreement regarding parcel 3a was not rescinded, and there is no competent, credible evidence of a separate $30,000 payment in consideration of parcel 3a, the $178,000 total of the March 21, 2002 judgment entry presumably should be reduced by $30,000. The trial court's March 21, 2002 judgment entry is therefore against the manifest weight of the evidence. This portion of sellers' assignment of error is well-taken.
 {¶ 37} We now turn our attention to sellers' argument that the reimbursement amount should be further reduced by $3,000. In the October 3, 2000 judgment entry, the trial court added $3,000 to the $150,000 down payment and $25,000 partial payment made by buyers. The trial court explained that "[s]ubsequent to the execution of the 1996 contract [buyers] * * * paid [sellers] an additional $3,000 for unsubdivided acreage." Sellers argue that they never received an additional $3,000 from buyers.
 {¶ 38} The record discloses that there was confusion as to what the proceeds from various checks, made payable to sellers, were actually applied toward.
 {¶ 39} "Q. [on direct examination of Mladen Medancic] I would like to go through the checks one by one and explain what those checks are. * * *
 {¶ 40} "A. For any bills that we owed him [Robert Mayer]. He applied it to whatever, sometimes he needed money for taxes. Sometimes he needed money for whatever, we just gave him the checks, tried to keep it monthly the best that we could."
 {¶ 41} Two separate checks were submitted as exhibits with the trial court. Each check was in the amount of $3,000, and was signed by buyers and made payable to seller, Robert Mayer. The first check was dated March 12, 1996, and stated in the memo section that it was partly for legal expenses and partly for land. The second check was dated April 2, 1996, and stated in the memo section that it was partly for taxes and partly for land. On direct examination, buyer, Mladen Medancic, further testified that he believed portions of both checks were to be applied as payment for the unsubdivided developmental land of parcel 5a. Sellers failed to provide any evidence establishing that these checks' proceeds were used for other miscellaneous expenses, rather than parcel 5a.
 {¶ 42} Here, there is competent and credible evidence that buyers made a $3,000 payment for the unsubdivided developmental land of parcel 5a. Thus, this portion of sellers' assignment of error is not well-taken.
 {¶ 43} We have been unable to detect any competent, credible evidence that buyers are entitled to the additional $30,000 reimbursement of the March 21, 2002 judgment entry. However, we are mindful that the trial court is in a better position to make such a determination, and was previously unable to rely upon a review of the transcript to aid in its determination.
 {¶ 44} We are also inclined to note that there seems to be some confusion as to the parties named in the trial court's judgment entries. The record demonstrates that buyers, A-Custom Builder's and the Medancics, were named as defendants in two separate complaints filed by sellers.[5] In response, A-Custom Builders and the Medancics filed separate and identical answers and counterclaims. Subsequently, this matter was consolidated. Despite the consolidation of this matter, the trial court's October 3, 2000 judgment entry, and its March 21, 2002 judgment entry, only orders sellers to reimburse A-Custom Builders. Due to this discrepancy, we request that the trial court clarify whether its order of reimbursement includes the Medancics, or whether it relates solely to A-Custom Builders.
 {¶ 45} The trial court's March 21, 2002 judgment entry is reversed and this matter is remanded to the trial court to reconsider its position regarding the $30,000 addition in light of the transcript and to clarify its findings. Furthermore, the trial court is to clarify whether its order of reimbursement pertains solely to A-Custom Builders.
DIANE V. GRENDELL and CYNTHIA WESTCOTT RICE, JJ., concur.
[1] Included in the purchase agreement were other various pieces of property that were to be transferred to buyers. These pieces of property, however, were separate transactions that were not part of the $930,000 purchase which is relevant to this appeal.
[2] The only insight made by the trial court as to why it made this addition was "that a mathematical error was made in the foregoing judgment entry."
[3] While neither party is under a duty to submit a transcript with the trial court on remand, it is evident that the transcript contains evidence that would have been of assistance to the trial court.
[4] This is further exemplified by the October 3, 2000 judgment entry which specifically stated that the $30,000 subtraction was for "Marion (sic) Medancic's residence."
[5] The Medancics are the sole owners of A-Custom Builders and acted as guarantors of the land purchase agreement.