OPINION
{¶ 1} Appellant, Ohio Rail Development Commission, appeals from the May 28, 2003 judgment entry of the Lake County Court of Common Pleas, granting appellee's, the city of Mentor's, petitions to construct a new highway railroad at-grade crossing at Plaza Boulevard across the tracks of defendants, CSX Transportation, Incorporated ("CSX"), and Norfolk Southern Railway Company ("NS").
 {¶ 2} On October 17, 2000, appellee filed petitions against CSX and NS, pursuant to R.C. 4957.30 and R.C. 4957.31, seeking permission to construct a new highway railroad at-grade crossing, known as the Plaza Connector, over three mainline railroad tracks in connection with a proposed extension of Plaza Boulevard north from the intersection of Mentor Avenue to St. Clair Avenue in Mentor, Ohio.[1]
 {¶ 3} Appellant filed a motion to intervene which was granted by the trial court on April 1, 2003.
 {¶ 4} The parties mediated the instant dispute in April 2003, but were unable to reach an agreement. A bench trial was held on April 14, 2003 through April 28, 2003.[2]
 {¶ 5} Appellee, Ohio's fifth largest retail center, is a growing community that has experienced significant commercial, industrial, and residential development over the last several decades. Appellee's traffic problems are a concern in its retail/commercial center around the Great Lakes Mall, located in the southwest portion. The railroad corridor, which divides appellee in half, consists of two independent railroad tracks owned and operated by CSX and NS. CSX operates approximately fifty to sixty trains per day, and NS operates about eight to twelve trains per day through appellee.
 {¶ 6} In 1990, the Master Street Program Committee, a group comprised of city council members, planning commission members, and residents of appellee, recommended the construction of the Plaza Connector to appellee's city council.
 {¶ 7} In the early 1990's, appellee retained three independent consultants, Northeast Ohio Areawide Coordinating Agency ("NOACA"), URS Consultants ("URS"), and CT Consultants, Inc. ("CT"), which confirmed the need for traffic improvements and an additional north/south grade crossing in appellee's southwest portion in order to relieve its growing congestion and delay. It was determined that an underpass was not physically or economically feasible, and that an at-grade crossing be constructed to protect the health, safety, and welfare of appellee's residents.
 {¶ 8} An at-grade crossing would cost appellee approximately $1,623,000, whereas an underpass, if physically feasible, would cost about $14,970,000. Studies also found that the underpass alternative would have a much greater negative economic impact upon the affected businesses, employees, and appellee itself. In addition, appellee does not have the financial resources needed to finance the construction of a grade separation structure.
 {¶ 9} In 2002, CT updated its study and found that traffic congestion problems in the southwest portion were worse and that the transportation network was failing. CT determined that due to the problem here, appellee's motorists expend approximately $5,087,160 per year in excess fuel and time costs. CT's updated study indicated that the Plaza Connector would help alleviate traffic congestion, improve traffic flow, reduce both accident rates and the millions of dollars expended by appellee's motorists as a result of those accidents, excess travel costs, delay damages, and fuel expenses, as well as improve police, fire, and EMS response times.
 {¶ 10} Studies showed that accident rates in the area at issue have risen since 1995, due mainly to the significant traffic congestion, causing injuries ranging from bumps and bruises to deaths. Appellee presented evidence that motorists spend approximately $4,103,172 per year for the costs associated with traffic accidents in the affected area. If steps are not taken to alleviate the traffic congestion, accident costs will rise to approximately $5,245,310 annually by 2022. As a result of the traffic congestion and lack of an additional north/south connection, emergency response times are below the recommended national standards.
 {¶ 11} Gilbert Carmichael ("Carmichael"), former Federal Railroad Administrator, testified for CSX that he investigated the proposed at-grade crossing and inspected the site. Carmichael indicated that an increase in traffic congestion equals an increase in both accidents and wear and tear on the roadway system.
 {¶ 12} Appellee's proposal evidences that it has offered to equip the Plaza Connector crossing with the highest level of safety devices possible. Appellee's proposal contains an at-grade crossing with state of the art protective devices, including four-quadrant gates, median barriers, vehicle presence detectors, interconnected constant warning devices, an advanced warning system, and traffic improvements.
 {¶ 13} Susan Kirkland ("Kirkland"), appellant's manager of safety operations, testified that four-quadrant gates are still experimental in Ohio.[3] However, Kirkland admitted that the state of Ohio will implement four-quadrant gates in the future because they are better than other available alternatives and are an improvement over the standard two-quadrant gates. Kirtland also stated that appellee's proposal is reasonable and feasible.
 {¶ 14} Dan Gilbert ("Gilbert"), NS's system manager for grade crossing safety, indicated that four-quadrant gates help motorists make better decisions at highway-rail grade crossings. James Young ("Young"), chairman of NS's grade crossing safety and trespass section, stated that four-quadrant gates are the best active safety devices available for highway-rail grade crossings.
 {¶ 15} The Federal Railroad Administration conducted a nationwide study of supplemental safety devices used at highway-rail grade crossings and found that four-quadrant gates and median barriers have an effectiveness rate of ninety-two percent. Appellee also presented evidence that four-quadrant gates and median barriers together reduce driver violations of traffic signals and safety devices at grade crossings by ninety-eight percent.
 {¶ 16} Ronald Eck ("Eck"), a licensed civil engineer, testified for appellee that after considerable investigation, he believed that the proposed at-grade crossing could be designed to be reasonably safe.
 {¶ 17} Eric Peterson ("Peterson"), CSX's assistant chief engineer for signal design and construction, indicated that he had safety concerns regarding the installation of the additional mainline tracks. Also, Peterson believed that a complete engineering study at the location at issue was required in order to properly calculate warning time.
 {¶ 18} Chris Burger ("Burger") has been involved in the railroad industry for about forty years and has held various train dispatching, operations, and management positions during his career. Burger was retained by appellee to analyze what impact the Plaza Connector grade crossing would have on CSX's and NS's train operations in Northeast Ohio. Burger opined that the construction of the proposed grade crossing would have no significant impact on CSX's and NS's train operations.
 {¶ 19} Pursuant to its May 28, 2003 judgment entry, the trial court granted appellee's petitions to construct a new highway railroad at-grade crossing at Plaza Boulevard across the tracks of CSX and NS. The trial court noted that it would set a hearing on the measure of damages for the appropriation of the railroads' property under R.C. 163.01.[4] It is from that judgment that appellant filed a timely notice of appeal and makes the following assignment of error:
 {¶ 20} "The trial court erred in granting [appellee's] petitions for an at-grade road crossing."
 {¶ 21} In its sole assignment of error, appellant argues that the trial court erred in granting appellee's petitions for an at-grade road crossing. Appellant presents two issues. In its first issue, appellant alleges that the trial court's findings of fact and conclusions of law are erroneous, and its judgment should be reversed, since the evidence shows that construction of an at-grade crossing would be unsafe, that a grade-separated crossing would be safer, and that appellee failed to submit final plans regarding safety gates at the proposed location. In its second issue, appellant contends that the overwhelming majority of the trial court's findings of fact and conclusions of law are a verbatim repeat of those submitted by appellee, and, thus, are subject to increased scrutiny.
 {¶ 22} An appellate court will not substitute its judgment for that of the trial court where the record contains competent and credible evidence supporting the findings of fact and conclusions of law rendered by the trial court. Hubbard ex rel. Creed v. Sauline (1996), 74 Ohio St.3d 402,406. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80.
 {¶ 23} Gerijo, Inc. v. Fairfield (1994), 70 Ohio St.3d 223, 226, states:
 {¶ 24} "* * * [J]udgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279 * * *, syllabus. We must indulge every reasonable presumption in favor of the lower court's judgment and finding of facts. Seasons Coal [supra] * * *. In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. See Ross v.Ross (1980), 64 Ohio St.2d 203 * * *." (Parallel citations omitted.)
 {¶ 25} R.C. 4957.31 provides that:
 {¶ 26} "[t]he petition referred to in [R.C. 4957.30] shall set forth the reasons that are supposed to make such change or alteration necessary or desirable. The court of common pleas thereupon shall have the jurisdiction of the parties and the subject matter of the petition, and may proceed to examine the matter, either by evidence, by reference to a master commissioner, or otherwise. If satisfied that such construction is reasonably required to accommodate the public, or to avoid excessive expense, in view of the small amount of traffic on the highway or railroad, and considering the future uses to which the highway may be adapted, or in view of the difficulties of other methods of construction, or for other good and sufficient reasons, the court shall make an order permitting such crossing at a grade or diversion to be established. In such order, the court may prescribe that gates, signals, watchmen, or other safeguards shall be maintained by the railroad company, in addition to the signals and safeguards prescribed by law, and all such orders shall be binding upon the parties and be observed by them."
 {¶ 27} In the case at bar, with respect to its first issue, appellant maintains that the trial court's findings of fact and conclusions of law are erroneous. Appellant's reliance on Faulkner v. Mentor ExemptedVillage Bd. of Edn. (Sept. 18, 1987), 11th Dist. No. 12-096, 1987 Ohio App. LEXIS 8770, and G L Investments v. Designer's Workshop, Inc. (June 26, 1998), 11th Dist. No. 97-L-072, 1998 Ohio App. LEXIS 2940, for the proposition that this court should apply the "clearly erroneous" standard of review under Fed.Civ.R. 52 and that the trial court's findings of fact should not be given any deference is misplaced.
 {¶ 28} To clarify, in Faulkner, supra, at 4, this court cited UnitedStates v. U.S. Gypsum Co. (1948), 333 U.S. 364, and stated that a lower court's findings of fact are reviewable if they are clearly erroneous. We went on to state that the law is clear in Ohio that an appellate court will not disturb the trier of fact's findings unless they are against the manifest weight of the evidence. Id. at 6. We held in Faulkner, supra, at 7, that "a review of the record reveals that there is competent, credible evidence to support all of the findings that the appellant questions."
 {¶ 29} In G L Investments, supra, at issue was whether a particular item was personal property or a fixture. This court stated that whether at item is real or personal property is a mixed question of law and fact. Id. at 10. We indicated that on issues regarding facts, we defer to the trial court, but on issues relating to legal conclusions, we review the decision de novo. Id.
 {¶ 30} In the instant matter, although both Ohio Civ.R. 52 and Fed.Civ.R. 52 indicate that in actions tried by the court without a jury, the court shall state in writing the conclusions of fact separately from the conclusions of law, only Fed.Civ.R. 52 requires that findings of fact shall not be set aside unless "clearly erroneous." Here, appellant's reliance on federal law is misplaced. Rather, manifest weight is the applicable standard of review. See, generally, Mayer v. Medancic, 11th Dist. Nos. 2002-G-2431, 2002-G2-432, and 2002-G-2433, 2003-Ohio-5355. A review of the record reveals that there is competent, credible evidence to support all of the findings that appellant questions.
 {¶ 31} Pursuant to R.C. 4957.31, the trial court stated at paragraphs 696 and 697 in its judgment entry that:
 {¶ 32} "[Appellee's] traffic congestion poses a significant risk to the health, safety, and welfare of [its] residents and motorists. The Plaza Boulevard Connector is needed to protect the health, safety, and welfare of [appellee's] residents and motorists. An underpass is not physically or economically feasible at the Plaza Boulevard location. The proposed at-grade crossing at Plaza Boulevard will be one of the safest in the State of Ohio because it will have the highest form of protective devices currently available. The proposed crossing will not have a significant impact upon the train operations of either [CSX] or [NS].
 {¶ 33} "Accordingly, the construction of an at-grade crossing over the three mainline railroad tracks of [CSX] and [NS] at Plaza Boulevard is reasonably required to accommodate the public, in view of the difficulties and excessive expense of other methods of construction, and considering that once an at-grade crossing is constructed, federal, state, and railroad funding may be available to construct an underpass if it is found to be feasible and appropriate, and for other good and sufficient reasons. * * *"
 {¶ 34} We agree. Appellee presented competent, credible evidence that the proposed at-grade crossing is reasonably required.
 {¶ 35} Again, due to the gridlock which causes hundreds of accidents each year, three independent consultants, NOACA, URS, and CT confirmed the need for traffic improvements and an additional north/south grade crossing. It was determined that an underpass was not physically or economically feasible, and that an at-grade crossing be constructed to protect the health, safety, and welfare of appellee's residents.[5]
Appellee does not have the financial resources needed to construct a grade separation structure, which would cost many millions of dollars more than the at-grade proposal.
 {¶ 36} CT's updated study indicated that the Plaza Connector would help alleviate traffic congestion, improve traffic flow, reduce both accident rates and the millions of dollars expended by appellee's motorists as a result of those accidents, excess travel costs, delay damages, and fuel expenses, as well as improve police, fire, and EMS response times. Appellee's proposal evidences that it has offered to equip the Plaza Connector crossing with the highest level of safety devices possible.
 {¶ 37} Former Federal Railroad Administrator, Carmichael, indicated that an increase in traffic congestion equals an increase in both accidents and wear and tear on the roadway system. Kirkland, appellant's manager of safety operations, indicated that the state of Ohio will implement four-quadrant gates in the future because they are better than other available alternatives and are an improvement over the standard two-quadrant gates. Kirtland also stated that appellee's proposal is reasonable and feasible. Gilbert, NS's system manager, and Young, chairman of NS's grade crossing safety and trespass section, indicated positive aspects regarding four-quadrant gates. Engineer Eck testified that the proposed at-grade crossing could be designed to be reasonably safe. Also, Burger, who has been involved in the railroad industry for about forty years, opined that the construction of the proposed grade crossing would have no significant impact on CSX's and NS's train operations.
 {¶ 38} The evidence establishes that four-quadrant gates and median barriers are the highest form of safety devices available for grade crossings and have been proven to drastically reduce crossing accidents. Pursuant to the Federal Railroad Administration's nationwide study, four-quadrant gates and median barriers have an effectiveness rate of ninety-two percent. Also four-quadrant gates and median barriers together reduce driver violations of traffic signals and safety devices at grade crossings by ninety-eight percent.
 {¶ 39} Thus, the trial court's decision pursuant to R.C. 4957.31 is supported by the weight of the evidence. There is no requirement in R.C.4957.31 that a final engineering analysis be performed prior to the approval of a grade crossing or that the parties cooperate before a detailed design is undertaken. Based on the totality of the circumstances, the at-grade crossing is reasonably required. See, generally, Fostoria v. CSX Transp., Inc. (Dec. 18, 1991), 3d Dist. No. 13-91-3, 1991 Ohio App. LEXIS 6071. Appellant's first issue is without merit.
 {¶ 40} In its second issue, appellant alleges that the trial court's findings of fact and conclusions of law are a verbatim narrative of those submitted by appellee, which subjects the trial court's decision to increased scrutiny.
 {¶ 41} Pursuant to Civ.R. 52, "[a] trial court may adopt as its own a party's proposed findings of fact and conclusions of law if it has thoroughly read the document to ensure that it is completely accurate in fact and law." Adkins v. Adkins (1988), 43 Ohio App.3d 95, paragraph three of the syllabus.
 {¶ 42} This court stated in Chardon Park, Inc. v. Great LakesCrushing, Ltd., 11th Dist. No. 2003-G-2524, 2004-Ohio-7221, at ¶ 38-39, that:
 {¶ 43} "`the trial court's adoption of the appellee's findings of fact and conclusions of law is not in error unless the appellant can show that the facts or law taken up were erroneous.' New Haven Corner Carry Out,Inc. v. Clay Distrib. Co., 3d Dist. No. 13-013-0, 2002-Ohio-2726, at ¶ 26. * * * (Citations omitted).
 {¶ 44} "As such, it was not per se error for the trial court to adopt, verbatim, Great Lakes' proposed findings of fact and conclusions of law. Error can only be found when the findings of fact and/or conclusions of law adopted by the trial court are against the manifest weight of the evidence. * * *"
 {¶ 45} In the instant case, based on Adkins, supra, the trial court thoroughly reviewed appellee's proposed findings to ensure that it was completely accurate in fact and law. The judgment entry reveals that the trial court did not adopt, verbatim, appellee's findings of fact and conclusions of law. Rather, the trial court omitted as well as changed numerous findings and conclusions proposed by appellee, and added its own findings of fact and conclusions of law. Again, the trial court's decision is supported by the weight of the evidence. As such, the trial court's judgment entry is not subject to any increased scrutiny. Appellant's second issue is without merit.
 {¶ 46} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Grendell, J., Rice, J., concur.
[1] CSX was named as a defendant in Case No. 00 CV 001662, and NS was named as a defendant in Case No. 00 CV 001663. The trial court consolidated the two actions on September 21, 2001.
[2] At the beginning of trial, the parties stipulated that the trial court would hear and decide all issues raised by appellee's petitions, except the question regarding compensation, which was to be heard, if necessary, in a later proceeding.
[3] The trial court noted in its May 28, 2003 judgment entry that a four-quadrant gate crossing is located in Putnam County, Ohio, and that they are not experimental devices despite Kirkland's testimony to the contrary.
[4] On October 14, 2003, this court determined that the trial court's judgment entry was a final appealable order. Further, we stated that R.C. 163.01 is not applicable to the instant matter.
[5] None of the parties submitted any arguments or evidence as to whether an overpass should have been considered as an additional alternative.