OPINION *Page 2 
{¶ 1} Defendant-appellant DG Pools appeals the decision of the Mahoning County Common Pleas Court granting judgment in favor of plaintiff-appellee Creative Concrete for the amount of $6,270 plus prejudgment interest. Two issues are raised in this appeal. The first issue is whether the judgment was against the manifest weight of the evidence. The second issue is whether the trial court erred when it granted the request for prejudgment interest. We find no merit with DG Pools' arguments and thus, affirm the judgment of the trial court.
 STATEMENT OF THE CASE {¶ 2} In 2005, Thomas and Connie Korner entered into a contract with DG Pools to do some work on their pool. (Korner Depo. 6-7). This work included replacing the concrete that surrounded the pool. DG Pools subcontracted the concrete work to Creative Concrete.
 {¶ 3} DG Pools informed Creative Concrete that the concrete was to be colored concrete and it was to have a broom finish. (Partial Tr. Patterson Testimony 10). It also informed Creative Concrete that it had to use fiber mesh rather than metal mesh as reinforcement for the concrete. (Partial Tr. Patterson Testimony 10). DG Pools indicated that they would install tracks for the pool cover and that Creative Concrete was to put the concrete in so that it would abut and be even with the tracks. The contract specified that Creative Concrete would be paid $6,270 for the concrete work. (Partial Tr. Patterson Testimony 9).
 {¶ 4} After Creative Concrete completed the work, the Korners were not satisfied with it. They complained of it being too high in certain places, too low in other places, uneven in spots, large chunks of concrete protruded out of the concrete giving the appearance of lumpy concrete, and in certain spots the concrete did not extend to the pool cover tracks. DG Pools tried to alleviate their concerns by grinding the concrete where it was too high and where large chunks were sticking up. However, DG Pools and the Korners agreed that it did not remedy the situation and instead *Page 3 
decided to tear up the concrete and have it redone by another subcontractor, Ross Lago.
 {¶ 5} Due to DG Pools (and the Korners) dissatisfaction with the concrete job done by Creative Concrete, DG Pools withheld payment. This action caused Creative Concrete to file a small claims complaint in Mahoning County Court. It sought payment of the contract price along with prejudgment interest. DG Pools answered and counterclaimed. In its counterclaim, it sought damages in the sum of $21,978 for the removal and replacement of Creative Concrete's concrete work. The County Court then transferred the cause to the Common Pleas Court because the counterclaim exceeded the County Court's jurisdictional limit.
 {¶ 6} In the Common Pleas Court, Creative Concrete filed an amended complaint. The amended complaint sought not only the contract price of $6,270 plus prejudgment interest but also sought an award of attorney fees. DG Pools then filed its answer and counterclaim. It was similar to the answer and counterclaim that was filed in the County Court; it stated that Creative Concrete materially breached the contract and sought damages in the sum of $21,978 for the removal and replacement of the concrete work done by Creative Concrete.
 {¶ 7} The case was tried before the magistrate. The magistrate determined that, given the facts of this case, there was not a material breach of the contract, DG Pools owed Creative Concrete payment for its work, and DG Pools failed to establish its counterclaim.
 {¶ 8} "The Magistrate finds that there were some areas of this pool deck which were less than meticulous. Plaintiff offered testimony that some of these problems including the `balling' of the fiber mesh concrete, could be rather easily cured. Of course, plaintiff was never given the opportunity to return to the site and address any of these concerns.
 {¶ 9} "The Magistrate finds the testimony of Ross Lago to be particularly credible, trustworthy and compelling. Mr. Lago admitted that he considered Plaintiff to be `a friend'. However, he was also a competitor of Plaintiff and had preformed concrete work for the Defendant, including this project. Mr. Lago testified unequivocally that the work performed by Plaintiff was `a payable job' which he *Page 4 
conveyed to the Defendant and testified that he had the opportunity to scope or review the entire job and failed to find any areas which he felt were substandard.
 {¶ 10} "Obviously, the homeowners in this case were disappointed with the quality of the work performed; however the homeowners' opinions are not dispositive of the issue regarding the quality of Plaintiffs work or whether it constituted a material breach of the contract. The decision of the Defendant to completely tear out the concrete poured by Plaintiff was a business decision made for the purpose of satisfying and pleasing its customer. However, these costs and expenses should not be borne by Plaintiff in the absence of a showing by the Defendant that Plaintiffs work was so substandard as to constitute a material breach of the contract. The Magistrate finds that the Defendant has failed to establish the elements of its cause of action for breach of contract set forth in its counterclaim by a preponderance of the evidence. As such, it has also failed to establish its affirmative defense to the complaint that would otherwise relieve it from its obligation to perform pursuant to the terms of the contract." 06/13/07 Magistrate's Decision.
 {¶ 11} The magistrate then awarded prejudgment interest for Creative Concrete. However, the request for attorney fees was denied.
 {¶ 12} Both Creative Concrete and DG Pools filed timely objections to the magistrate's findings. The trial court overruled the objections and adopted the magistrate's findings, but it indicated that it did not necessarily agree with the decision:
 {¶ 13} "The Court has reviewed the Magistrate's Decision, the Briefs of Parties, the Deposition of Thomas Korner and the transcript of the trial. This Court finds it difficult to believe that Defendant would agree to remove all of Plaintiff's concrete work and replace it with another contractor's work if Plaintiff's work was satisfactory. Obviously, the home owners were completely dissatisfied with Plaintiff's work and, even though the succeeding contractor said that Plaintiff's work was `a payable job', it seems obvious that the work was less then [sic] ideal. It appears to the Court that, at least logically, Defendant would not agree to replace the entire concrete job just to be nice. Furthermore, it appears that Plaintiff's work was substandard. Nonetheless, this appears to be a matter of weighing the credibility of the witnesses, which the Magistrate is in the best position to do, and the Magistrate has determined otherwise. *Page 5 
Wherefore, the objections of the parties are overruled and the Magistrate's Decision is affirmed as follows:" 08/23/07 J.E.
 {¶ 14} DG Pools timely appeals from that determination.
 ASSIGNMENT OF ERROR {¶ 15} "THE TRIAL COURT ERRED IN ENTERING JUDGMENT IN PLAINTIFF-APPELLEE'S FAVOR IN THE SUM OF $6,270, TOGETHER WITH PREJUDGMENT INTEREST THEREON."
 {¶ 16} DG Pools raise three distinct issues under this assignment of error. The first one asserts that the magistrate's decision finding that there was not a material breach of the contract was against the manifest weight of the evidence.
 {¶ 17} Recently, the Ohio Supreme Court has reviewed the manifest weight standard for civil cases. State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, ¶ 21-27 (reviewing a sexual predator classification). It explained that the standard in C.E. Morris Co. v. Foley Constr. Co.
(1978), 54 Ohio St.2d 279, is the applicable standard for reviewing civil manifest weight of the evidence arguments. Thus, "[judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." Id. Furthermore, the Court reiterated that when reviewing a judgment under a manifest-weight-of-the-evidence standard in a civil case, a court has an obligation to presume that the findings of the trier of fact are correct. Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citingSeasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80-81.
 {¶ 18} The Court then compared the C.E. Morris holding with the holding in State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, which sets forth the criminal manifest-weight-of-the-evidence standard.Wilson, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25-26. The Court explained that the civil standard affords more deference to the lower court than does the criminal standard. Id. at ¶ 26.
 {¶ 19} Keeping that standard in mind, we must review the arguments and evidence of this case to determine whether the decision that the contract was not materially breached was against the manifest weight of the evidence. DG Pools argues that Lago's admission that certain characteristics would make a job not "a *Page 6 
payable job," along with Korner's alleged uncontested testimony concerning the condition of the concrete after Creative Concrete had finished the job, shows a material breach of the contract.
 {¶ 20} The determination of whether a party's breach of a contract was a "material breach" is generally a question of fact. Kersh v. MontgomeryDevelopmental Ctr. (1987), 35 Ohio App.3d 61, 63. "At common law, a `material breach' of contract is a party's failure to perform an element of the contract that is `so fundamental to the contract' that the single failure to perform `defeats the essential purpose of the contract or makes it impossible for the other party to perform.'" O'Brien v. OhioState Univ., 10th Dist. No. 06AP-946, 2007-Ohio-4833, ¶ 56.
 {¶ 21} Here, we have three witnesses testifying as to the quality of the concrete job done by Creative Concrete: Thomas Korner, the pool owner; Ross Lago, the subcontractor who re-poured the concrete; and Mike Patterson, the owner of Creative Concrete. Korner testified by deposition. His testimony concentrated on the problems he had with Creative Concrete's concrete job. He took pictures, which were admitted into evidence, to show the imperfections in the concrete. He stated that the finish was so rough that when you walked on it, it would hurt your feet. (Korner Depo. 20). Korner explained that there was one place where there was no concrete abutting the tracks for the pool cover. (Korner Depo. 23). He indicated that there were large lumps in the concrete and if you walked across them you could hurt yourself. (Korner Depo. 21). Korner stated that in some of these areas, which he did not have pictures of, there was concrete sticking up that was really sharp and if a child walked on it, the child would "tear their foot up terribly." (Korner Depo. 36-37).
 {¶ 22} Ross Lago, the contractor that DG Pools hired to redo the concrete work, also testified at trial. Lago explained that DG Pools called him to come and look at the concrete job prior to them tearing it out. (Partial Tr. Lago Testimony 5). He opined that after reviewing the job, this was "a payable job"; he did not believe that this was substandard work. (Partial Tr. Lago Testimony 7). However, Lago also stated that certain sections of the concrete may have had balls. These balls were from the fiber mesh reinforcement that DG Pools made subcontractors use in the concrete. He indicated that the balls, also called burgers, were caused from broom finishing the *Page 7 
concrete. (Partial Tr. Lago Testimony 10). Lago stated that these burgers were not a problem because after the concrete dried up, they could be kicked off or toweled off. (Partial Tr. Lago Testimony 11).
 {¶ 23} On cross-examination he indicated that if there were areas on the concrete that were sharp enough to tear a child's foot, that would not be "a payable job." (Partial Tr. Lago Testimony 21). He also stated that if there was an area where the concrete was not flush with the tracks for the pool cover, that would not be within the standard for a payable job. (Partial Tr. Lago Testimony 22).
 {¶ 24} Mike Patterson, owner of Creative Concrete, also testified. His testimony concerning the concrete burgers mimicked Lago's testimony. (Partial Tr. Patterson Testimony 5, 11-12). He further added that there were burgers in the seams of the concrete because DG Pools made him do hand cuts. He clarified that if he had been permitted to do saw cuts then there would not have been any burgers in the seams. (Partial Tr. Patterson Testimony 22-23, 26). He also indicated that there was a problem with the way the rails were set in by DG Pools. He explained that the concrete was to have a one inch fall, but that could not be done with the way the tracks for the pool cover were laid. (Partial Tr. Patterson Testimony 18-19). He further stated that the tracks were not level with each other; on one side of the pool the track was 3/4 of an inch higher than the pool cover, while on the other side it was only 1/2 inch higher. (Partial Tr. Patterson Testimony 18, 29). This, he asserted, caused a problem for the concrete and the fall of the concrete. (Partial Tr. Patterson Testimony 29).
 {¶ 25} In addition to the above testimony, we note that the evidence shows that Creative Concrete was not offered the opportunity to return to the job site and remedy any problems that DG Pools and the Korners had with the concrete job. Without that opportunity, the evidence must be clear that the work was totally unacceptable. The evidence here did not suggest that the work was of an unacceptable workmanship.
 {¶ 26} Admittedly, Lago does state that certain conditions would not make a job "a payable job." Likewise, Korner's testimony indicates that those conditions were present in the concrete done by Creative Concrete. However, those two statements do not indicate that the magistrate's decision was against the manifest weight of the evidence. Lago's statement as to what is a payable job indicates the standard he *Page 8 
used to view the concrete done by Creative Concrete. Since he determined that the job was "a payable job," clearly he did not find any of those conditions present in the concrete job. Although he was never asked whether he saw a section of the concrete that was so sharp it would cut a child's foot or whether there was concrete abutting the pool cover tracks, his indication that it was a payable job implicitly indicates he did not find any of those conditions.
 {¶ 27} Furthermore, the magistrate specifically stated that it found Lago's testimony "credible, trustworthy and compelling." The trial court, while adopting the magistrate's findings, stated that even though Lago said it was "`a payable job', it seems obvious that the work was less then [sic] ideal. It appears to the Court that, at least logically, Defendant would not agree to replace the entire concrete job just to be nice." 08/23/07 J.E. However, as the trial court also indicated, this determination was a matter of weighing the credibility of the evidence and the magistrate was in the best position to do that.
 {¶ 28} While this court may agree with the trial court's sentiment about the legitimacy of DG Pools removing the concrete, it is, as the trial court indicated, a credibility question. As such, due deference is given to the magistrate's decision since he was in the best position to weigh the credibility of the witnesses. See Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, ¶ 26. Thus, the argument that the decision was against the manifest weight of the evidence lacks merit.
 {¶ 29} The second argument raised under this assignment of error states:
 {¶ 30} "Where a contractor substantially performs, but immaterially breaches a contract he is entitled to the contract price less the promissor's damages consequent to those immaterial breaches." (Underline in Original).
 {¶ 31} This is DG Pools alternative argument and it provides only one paragraph of analysis. This argument is based upon substantial performance. In general, the doctrine of substantial performance only supports "a recovery of the contract price less allowance for defects in performance or damages for failure to strictly comply with the contract." Hansel v. Creative Concrete Masonry Constr. Co.,148 Ohio App.3d 53, 2002-Ohio-198, ¶ 13. *Page 9 
 {¶ 32} In this instant case, the magistrate found that Creative Concrete performed under the contract and was entitled to payment. It made no finding that there was substantial performance. Substantial performance was raised as a defense in the answer to the complaint. In its decision, the magistrate stated:
 {¶ 33} "As such, it has also failed to establish its affirmative defense to the complaint that would otherwise relieve it from its obligation to perform pursuant to the terms of the contract."
 {¶ 34} As with DG Pools' first argument, the magistrate's decision was based upon the testimony of Lago. As we stated above, it was in the best position to determine the credibility of the witnesses. Thus, this argument lacks merit.
 {¶ 35} The third argument raised by DG Pools is in regards to the trial court's award of prejudgment interest for Creative Concrete. DG Pools argues that withholding payment was permitted under R.C. 4113.61(A)(1) because there was a bona fide dispute as to the quality of the work. Thus, according to it, Creative Concrete should not have been awarded prejudgment interest.
 {¶ 36} R.C. 4113.61 is commonly known as the Prompt-Payment Act. This statute essentially requires a contractor to timely pay its subcontractor or materialmen undisputed amounts under a contract and sets forth penalties for noncompliance. Masiongale Elec.-Mechanical,Inc. v. Constr. One, Inc., 102 Ohio St.3d 1, 2004-Ohio-1748, ¶ 10.
 {¶ 37} R.C. 4113.61(A)(1) states:
 {¶ 38} "(A)(1) If a subcontractor or material man submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in his [the contractor's] own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for improvements to property, shall pay to the:
 {¶ 39} "(a) Subcontractor, an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work performed;
 {¶ 40} "* * * *Page 10 
 {¶ 41} "The contractor may reduce the amount paid by any retainage provision contained in the contract, invoice, or purchase order between the contractor and the subcontractor or materialman, and may withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor or materialman." (Prior version of R.C. 4113.61, changes made to statute were minor, materialman was changed to material supplier).
 {¶ 42} Failure to comply with the above provisions, entitles the subcontractor to prejudgment interest. Here, the concrete work was alleged to be unsatisfactory and DG Pools withheld payment on the basis that it was necessary to resolve disputes over the work performed. The statute cited above permits a contractor to withhold "amounts that may be necessary to resolve * * * claims involving the work or labor preformed." R.C. 4113.61; Masiongale, 102 Ohio St.3d 1, 2004-Ohio-1748, ¶ 14. The Tenth District has interpreted that language to mean that prejudgment interest is not warranted under R.C. 4113.61 where the contractor, in good faith, withholds amounts when there is a disputed claim. Consortium Communications v. Cleveland Telecommunications, Inc. (Feb. 10, 1998), 10th Dist. No. 97APG08-1090. Thus, following the Tenth District's logic, if the contractor does not assert a good faith basis to withhold the money, then the subcontractor is entitled to prejudgment interest.
 {¶ 43} It is acknowledged that the statute does not provide this good faith test. However, in Masiongale, the Ohio Supreme Court stated:
 {¶ 44} "Our holding is in accord with other jurisdictions that allow a contractor to withhold payment from a subcontractor when the dispute concerns the performance of work or labor or the furnishing of material." Masiongale, 102 Ohio St.3d 1, 2004-Ohio-1748, ¶ 21.
 {¶ 45} It then cited to statutes and cases from other jurisdictions. Some of those jurisdictions have the good faith test.Masiongale did not involve the issue of whether the contractor in good faith withheld payment from a subcontractor on a dispute concerning the performance of the work. Rather, that case dealt with the contractor withholding on the basis of "breaches of lien-waiver and forum-selection clauses." The Supreme Court determined that the statutory language did include withholding in these types of disputes; "the only justifications for withholding payment *Page 11 
related to disputed liens or claims involving the performance of work or labor or the furnishing of materials." Id. at ¶ 20. Thus, whileMasiongale did not directly rule on the issue of whether the awarding of prejudgment interest under R.C. 4113.61 includes a good faith test, its citation to other authorities on the subject and indication that its holding is in conformity with those jurisdictions insinuates that good faith should be used to determine whether prejudgment interest under the Prompt-Payment Act is warranted.
 {¶ 46} Such a test may be a good policy. It could keep contractors from continually withholding money when there is no legitimate basis to withhold it. Also, it ensures that contractors will not have to pay prejudgment interest when there is a legitimate reason to withhold the payment.
 {¶ 47} Here, the Magistrate granted prejudgment interest. It stated:
 {¶ 48} "The Court having determined that the Defendant was not justified in refusing to pay Plaintiff for the work performed nor was it excused by Plaintiffs conduct in performing under the terms of the agreement, Plaintiff is entitled to prejudgment interest in accordance with the statutory rate from July 16, 2005 to the date of judgment."
 {¶ 49} DG Pools argues that justified is not equivalent to a good faith belief. While justified and good faith are not completely synonymous with each other, given the magistrate's entire reasoning, it appears he was finding that DG Pools did not have a good faith justification for withholding the money on the basis of unsatisfactory work. After all, the testimony of Lago established that it was "a payable job" and that Lago informed DG Pools of this opinion. Accordingly, for all of those reasons, we find no error with the trial court's order of prejudgment interest.
 {¶ 50} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
 DeGenaro, P.J., concurs. Donofrio, J., concurs. *Page 1