[Cite as *Catz Ents., Inc. v. Valdes*, 2012-Ohio-2586.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| CATZ ENTERPRISES, INC., | ) | |
| | ) | CASE NO. 11 MA 108 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| ALFONSO VALDES, | ) | |
| | ) | |
| DEFENDANT/THIRD PARTY | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| - VS - | ) | |
| | ) | |
| THOMAS A. ZEBRASKY, | ) | |
| | ) | |
| THIRD-PARTY DEFENDANTS. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas
                              Court, Case No. 08 CV 1355.

JUDGMENT:                     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:       Attorney William Ramage
                               4822 Market Street, Suite 220
                               Youngstown, OH 44512


For Defendant/Third Party
Plaintiff-Appellee:            Attorney Thomas Wilson
                               Comstock, Springer & Wilson Co., LPA
                               100 Federal Plaza East, Suite 926
                               Youngstown, OH 44503-1811


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich


                               Dated: June 5, 2012

DeGenaro, J.

{¶1} Plaintiff-Appellant, Catz Enterprises, Inc., owned by Thomas Zebrasky, appeals the June 13, 2011 decision of the Mahoning County Court of Common Pleas that awarded Defendant-Appellee, Alfonso Valdes, $6,000 in damages in a breach of an automobile service contract case. On appeal, Catz contends that the trial court's damages award was against the manifest weight of the evidence.

{¶2} Catz's argument is meritless. Although, the trial court was presented with conflicting testimony regarding the value of the vehicle at issue, the damages determination was based on competent, credible evidence. Accordingly, the judgment of the trial court is affirmed.

### Facts and Procedural History

{¶3} The current appeal arises from a remand of the case from this court to the common pleas court in order to redetermine damages between the parties. Between 1989 and 2005, Zebrasky restored approximately sixteen of Valdes' classic cars. In 1997, Zebrasky and Valdes entered into an agreement for Catz to restore Valdes' 1955 Jaguar XK-140 MC Drop Head Coupe ("DHC") in exchange for possession of a Jaguar XK-140 Open Two Seater ("OTS"). Both of these vehicles were in very poor condition, with value coming only from parts. Zebrasky had helped facilitate Valdes' purchase of the OTS in 1989 for $42,500, and the vehicle was stored with Catz after the purchase. Zebrasky sent an offer letter to Valdes in October 1997 detailing their agreement and noting that the OTS was worth around $15,000.

{¶4} In November of 2005, Valdes requested that Catz stop work on the vehicles and allow him to retake possession. However, Catz would not allow Valdes to retake the cars until all of his bills were paid.

{¶5} On April 7, 2006, Catz filed a complaint against Valdes, requesting inter alia, damages for service performed on the DHC. Catz claimed a possessory artisan's lien on the DHC and ownership of the OTS. Valdes filed his answer, along with a counterclaim, arguing in part that Catz and Zebrasky had breached the agreement. Following Valdes' motion for order of possession and a replevin hearing, the trial court ordered Catz to

return the DHC to Valdes.

**{¶6}** The matter was tried before the magistrate during which the parties presented testimony regarding the timeliness of the work performed on the DHC, as well as the level of completion of the restoration work and the value of the vehicle in 2005. The parties also presented testimony regarding the value of the OTS. Notably, Zebrasky testified that between 1997 and 2005, he had put approximately $94,864 worth of parts and labor into the OTS.

**{¶7}** On June 27, 2007, the magistrate entered a decision finding that Catz's untimely performance was a material breach of the service contract. The magistrate stated that the OTS was consideration for the DHC repair and that Catz acted at its own peril by adding value to the OTS before fulfilling its contractual obligations. The magistrate ordered that Catz return the OTS, that the parties compensate one another for various charges or missing items, and that the interest be borne equally between the parties. Catz filed objections to the magistrate's decision, and on October 24, 2007, the trial court issued an opinion adopting the magistrate's decision, which was appealed

**{¶8}** Meanwhile, Valdes filed a motion to enforce the trial court's October 24, 2007 order, claiming in part that Catz had stripped the OTS of its engine, transmission, headlights, and other parts prior to returning the vehicle. On February 5, 2008, the magistrate ruled that the decision ordered the return of the OTS in its present state, and did not allow for Catz to remove the improvements from the vehicle. Subsequent to Catz's objections, the trial court affirmed and adopted the magistrate's decision on March 18, 2008. This order was appealed and consolidated into the previously filed appeal.

**{¶9}** In *Catz Ent., Inc. v. Valdes*, 7th Dist. Nos. Nos. 07 MA 201, 07 MA 202, 08 MA 68, 2009-Ohio-4962, this court held that the trial court's damages award placed Valdes in a better position because the court ordered the OTS to be returned in a substantially different condition than it was in at the time of the contract formation. *Id.* at ¶ 55. We further held that based upon the record, we were unable to determine the vehicle's current value compared to the time the contract was formed. *Id.* at ¶ 56. Thus, the October 24, 2007 judgment on this issue was reversed and the case remanded to the

trial court "to determine the difference between the condition of the OTS at the time of contract formation and at present, and to reallocate the damages accordingly, in order to return Valdes to the status quo ante." *Id.* at ¶ 73. This court also vacated the trial court's March 18, 2008 judgment. *Id.* at ¶ 74.

**{¶10}** On remand, the matter came before the magistrate for a bench trial on November 22, 2010. Zebrasky testified that through Catz he restores classic automobiles and eighty percent of the restoration work Catz performs is on Jaguars. He explained that Plaintiff's Exhibit 2 was a photograph showing the condition of the OTS in 1997, and the OTS was the last white car in the row. Regarding his work restoring the OTS, he testified that he rebuilt the suspension, chassis, wiring, and a lot of the major components. He also painted the vehicle and had many of the parts chrome plated, although he did not finish the interior. Plaintiff's Exhibit 3 depicted the body of the OTS after he refinished it; the body was in approximately the same condition when the OTS was returned to Valdes.

**{¶11}** Zebrasky testified that when he returned the vehicle to Valdes, the engine and transmission were separate from the vehicle and both were in comparable condition to the engine and transmission that were in the OTS in 1997. He later claimed that the transmission returned to Valdes was the original transmission in the vehicle. Finally, he testified that besides the engine, all the parts that came with the OTS in 1997 were returned to Valdes in 2008.

**{¶12}** To determine the fair market value of a 1956 Jaguar, Zebrasky would consult a car guide that gives an approximate current value for the vehicle. He opined that the value of the OTS in 1997 was $15,000 based on the "Old Cars Price Guide." The value of the OTS in September 2009, when this court released its opinion, was $120,000; if it had been finished it would have been worth $180,000. He explained that the difference in the value was the cost to finish the OTS, such as rebuilding the motor and transmission, and finishing the assembly. He later testified that the February 2010 "Old Cars Price Guide" listed the value of a level one OTS as $187,000 and a level two as $130,900. Finally, he testified that when he returned the OTS to Valdes, it was in the

process of restoration towards a level one condition and his valuation of the vehicle was based on what a level one car is worth minus the additional cost of restoration needed to attain that level.

{¶13} On cross, Zebrasky identified Defendant's Exhibit A as photographs of the OTS as it appeared when the case was originally tried in 2007 and Exhibit B as a series of photographs of the vehicle when it was returned to Valdes. He later confirmed that Defendant's Exhibits B, D, E, and F accurately depicted the vehicle and parts returned to Valdes. Zebrasky confirmed that when he returned the OTS to Valdes, it was not in a drivable condition and it did not have a battery or any lights.

{¶14} On redirect, Zebrasky clarified that Defendant's Exhibit B did not accurately reflect the vehicle's paint condition because the photograph showed the OTS covered in frost since it was outside before Valdes picked it up. He explained that the engine that he returned to Valdes was the same style as the original engine and although the serial number did not match the original engine, this would not preclude the vehicle from attaining a level one condition. Further, when he received the vehicle in 1997, it did not have any lights on it.

{¶15} Next, James Boffo testified that he is an auto mechanic and restorer that specializes in Jaguars. He also was a Jaguar dealer from 1967 to 1984. He saw the OTS in May 2010 and examined the body and chassis, as well as the separate parts for the vehicle. All of the major parts for the vehicle were present when he examined it. He took photographs of the OTS, which were introduced as Plaintiff's Exhibit 4.

{¶16} Boffo testified that in May 2010, a number one level OTS was worth $170,000. He opined that it would take $40,000 to complete the vehicle at issue to a number one level; a fair price to charge a customer for the OTS would be $130,000 based on what it would take to complete the vehicle. He also stated that in the last three years, OTS prices have fluctuated a small amount. However, on cross, Boffo admitted that he did not compare the engine and transmission numbers to the serial numbers on the plate. He was not aware that Zebrasky removed the original engine from the OTS and returned it with a different engine, and Boffo agreed that would impact the value of

the vehicle.

{¶17} On redirect, Boffo testified that if the engine did not match the serial number, the OTS could probably still be restored to a number two level, but a buyer likely would not consider the vehicle to be in number one condition. In May 2010, a number two level OTS was listed at $130,900, so deducting the $40,000 to finish the vehicle, the OTS at issue was worth about $90,000.

{¶18} Valdes testified that he had bought and sold Jaguars for many years. He explained that when he gave the OTS to Zebrasky, it had a higher-performance MC engine that matched the serial number on the vehicle. The engine that was returned to him in February 2008 was for a four-door sedan. He would not consider the OTS to be a number one or two level with this engine.

{¶19} Valdes further testified that when Catz returned the OTS to him, the transmission and the brakes were not the originals. Furthermore, the paint was not a factory color for the year the OTS was manufactured, and a number one or two level OTS would not be painted that color. He also testified that the vehicle had no bumpers, gauges, or lights, and it had scratches and dents from parts being removed. He stated that when he gave Zebrasky the OTS, it was a complete car, although it was not running. Valdes opined that when Catz returned the OTS in February 2008, the vehicle's fair market value was between $5,000 and $8,800, and it was in a number six level condition. He testified that the value of the OTS had not changed much between then and the present day.

{¶20} On cross, Valdes admitted that he does not perform vehicle restorations. He denied that Exhibit 2 depicted the OTS when he gave it to Zebrasky and stated that the OTS had headlights when he gave it to Zebrasky. He also agreed that when he purchased the OTS in 1989, it needed repainting, an engine rebuild, and a total restoration; the OTS he received in 2008 needed a total restoration, some assembly, an engine rebuild, and repainting.

{¶21} Jamie I. Del Valle testified that he is a Jaguar dealer and also restores and appraises Jaguars. He saw the OTS in 2007 and he had seen the photographs of the

vehicle as it was returned to Valdes in February 2008. He confirmed that the engine in Defendant's Exhibit D was not the MC engine that was in the OTS when he viewed it in 2007. He also confirmed that the paint color on the OTS in 2008 was not used by Jaguar when the vehicle was manufactured. He opined that based on the photographs, the condition of the OTS in February 2008 was between a level five and six because of the body and was worth no more than $9,000 with that engine. He explained that it was a "parts car"; he did not know if the doors on the OTS belonged to the vehicle and if they fit, the vehicle had no lights or chromes, the wire wheels were old, the brakes were missing the drum, and the vehicle was in parts. He also stated that from the photographs, he did not know what was underneath the OTS.

{¶22} On cross, Del Valle testified that based on the photographs, it appeared some parts of the car were missing, like the grill, the accessories on the engine, the hydraulics, and the bumpers. Assuming that all the essential parts were present but not photographed, Del Valle estimated that it would cost no less than $100,000 to finish the OTS in a number two level condition. He also admitted that he and Valdes have been friends since they were children. Finally, when asked if he could give an opinion of the value of the unfinished vehicle, he replied that until it is finished, he could not give an opinion. However, on redirect, he testified again that the value of the OTS based upon the photographs from February 2008 was no more than $9,000. This figure was based on the price guides and accounted for the body work performed on the OTS.

{¶23} On April 20, 2011, the magistrate issued a decision finding that the difference between the fair market value of the OTS at the time of contract and the present value was $6,000 because the vehicle had depreciated in value from $15,000 to $9,000. Thus, the magistrate entered judgment in favor of Valdes and against Catz in the amount of $8,890, which was the $6,000 in damages to return Valdes to the status quo ante in addition to the $2,890 awarded to Valdes for breach of the service agreement in the prior case.

{¶24} Catz filed objections on April 26, 2011, challenging the magistrate's damages determination and reliance on Del Valle's testimony regarding the present value

of the OTS. Valdes also filed objections on May 6, 2011. Following a hearing before the trial court on both parties' objections to the magistrate's decision, the trial court issued a judgment entry on June 13, 2011 adopting the magistrate's decision.

### Manifest Weight of the Evidence

**{¶25}** Catz asserts one assignment of error on appeal:

**{¶26}** "The trial court's most recent decision in this case is against the manifest weight of the evidence."

**{¶27}** Pursuant to a civil manifest weight of the evidence standard of review, a reviewing court should defer to the judgment of the trial court in factual determinations, and "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court." *Creative Concrete v. D & G Pools*, 7th Dist. No. 07 MA 163, 2008-Ohio-3338, ¶ 17, quoting *C.E. Morris v. Foley Const. Co.*, 54 Ohio St.2d 279, 280, 376 N.E.2d 578 (1978). A reviewing court should make all reasonable presumptions in favor of the trial court's judgment and findings of fact. *Karches v. City of Cincinnati*, 38 Ohio St.3d 12, 19, 526 N.E.2d 1350 (1988). "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co., Inc. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

**{¶28}** Catz argues that the trial court erred in its damages determination. It contends that the court improperly based its determination of the vehicle's present value on Del Valle's testimony when he had only seen photographs of the OTS in its present condition, and ignored Zebrasky and Boffo's testimony even though they had actually viewed the vehicle after it was returned to Valdes. Furthermore, Catz notes that the trial court found that the OTS was presently worth less than in 1997, which ignores Zebrasky's testimony regarding all the restoration work he performed on the vehicle.

**{¶29}** This case consisted of conflicting testimony with each party presenting very different accounts of the condition of the OTS and its present value. *Catz I*, directed the

trial court to "determine the difference between the condition of the OTS at the time of contract formation and at present, be it in terms of restoration class level, parts value, or any other method of evaluation." *Catz I* at ¶ 56. The trial court used fair market value to calculate this difference, accepting Zebrasky's testimony that the vehicle had a market value of $15,000 in 1997 and Del Valle's testimony that its value was $9,000 in 2008.

**{¶30}** Del Valle's testimony regarding the present value of the OTS was imperfect due to the fact that he did not actually see the vehicle after 2007. He testified that based on the photographs, that parts were missing from the OTS, that he could not tell if the doors fit the vehicle, and that he could not see underneath the vehicle. Despite these issues, the trial court could still rely on Del Valle's testimony as competent, credible evidence of the present value of the OTS. Zebrasky testified that the Defendant's Exhibits B, D, E, and F accurately depicted the vehicle and parts returned to Valdes. Furthermore, Del Valle's testimony still appeared to be thorough: He did consider the work performed on the body of the OTS, as well as the different engine, the paint color, and the fact that the vehicle was disassembled.

**{¶31}** Moreover, the trial court could have found that Zebrasky and Boffo's testimony was less credible. Zebrasky based his valuation of the OTS on it reaching a level one condition and claimed that the vehicle could still reach this level even though it did not have the original engine. This testimony was undermined by Boffo who testified that a buyer would not consider a vehicle to be in a level one condition without the original engine. While the trial court could have accepted Boffo's valuation of the vehicle, which was based on the cost for the OTS to attain a level two condition, the trial court decided to rely on Del Valle's credible evidence of market value instead. Catz further argues that the trial court ignored Del Valle's testimony that he could restore the OTS to a level two condition for no less than $100,000, but again, the trial court accepted Del Valle's testimony on the present value of the vehicle.

**{¶32}** Finally, although Zebrasky did testify that he put a great deal of work into restoring the OTS, he admitted that the engine he returned to Valdes was not the original engine in the vehicle. Valdes also presented evidence that the vehicle Catz returned had

a different transmission and paint color from the original OTS and that these changes would negatively impact the value of the vehicle. Accordingly, there was competent credible evidence in the record to support a determination that the present value of OTS was lower than its value in 1997 before Zebrasky began the restoration.

**{¶33}** The trial court's judgment was not against the manifest weight of the evidence, thus Catz's sole assignment of error is meritless. The parties presented conflicting evidence regarding the present value of the OTS. The trial court chose to rely on the valuation from Valdes' expert rather than Catz's expert. The trial court's damages determination was based upon competent, credible evidence. Accordingly, the judgment of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.