[Cite as *Portage Exteriors v. Hein Constr., Inc.*, 2014-Ohio-2930.]

STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| PORTAGE EXTERIORS, INC., | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 13 BE 5 |
| V. | ) | |
| | ) | OPINION |
| HEIN CONSTRUCTION, INC., ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Court of Common
Pleas of Belmont County, Ohio
Case No. 10CV0222

JUDGMENT:     Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellant     Attorney Dean S. Hoover
Hudson Station, Suite 3
5 Atterbury Boulevard
Hudson, Ohio 44236

For Defendant-Appellee     Attorney John C. Ross
Daily Harpst, Ltd.
2475 Massillon Rd.
Akron, Ohio 44312

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: June 20, 2014

DONOFRIO, J.

**{¶1}** Plaintiff-appellant, Portage Exteriors, Inc., appeals from a Belmont County Common Pleas Court judgment in its favor for $18,350.43 on its claims against defendant-appellee, Hein Construction, Inc., following a bench trial.

**{¶2}** This case involves the renovation of the Union Local School District's (ULSD) school building. Hein was the general contractor for the job that included replacing the roof, installing and restoring the Exterior Insulation and Finish System (EIFS), and restoring the caulking. Hein subcontracted the EIFS and caulking restoration to Portage, which specializes in EIFS. EIFS is a synthetic stucco that allows a building to move without cracking.

**{¶3}** The parties entered into a subcontract that provided:

Scope of work: Per your quote dated 6-25-09; Remove and replace EIFS, includes metal flashings & flashing tape, replacement of new EMS per plans. Recoat EIFS, blank out and recoat existing EIFS. Painting of existing EIFS. Removal and replacement of caulking at windows, doors and control joints. Clean windows. Remove and replace down spouts. Rubbish removed to on site dumpster. Received and reviewed addendums. Work is to begin July 6th. Total $95,000.00.

(Pt. Ex.1). The parties subsequently entered into a "change order" for additional EIFS and painting work for $14,480.62. This resulted in a total subcontract price of $109,480.62. (Pt. Ex. 3).

**{¶4}** The ULSD project also had Plans and Specifications setting out the job. The parties disputed whether the Plans and Specifications were part of the Hein-Portage subcontract.

**{¶5}** Before beginning work on the school, Portage performed a "mock-up." A mock-up is a small sample of the work to be done. In the mock-up, Portage used a silicone caulking consistent with the Specifications. But Portage used a urethane compound on the job, which was inconsistent with the Specifications.

**{¶6}** Hein paid Portage's first payment application in the amount of $19,800.

(Pt. Exs. 14, 17). Disputes then arose regarding the quality of Portage's work. Hein did not make any further payments to Portage.

**{¶7}** Specifically, on September 30, 2009, a "pull test" was performed on Portage's caulking work. A pull test involves cutting a portion of the caulking to make a tab and then pulling the tab to check the adherence of the caulking. According to those present, Portage's work failed the pull test. According to Donovan Hysell, Portage's owner, the caulking failed the pull test because the caulk had not had sufficient time to cure and because waterproofing material had been applied which prevented the caulk from properly adhering.

**{¶8}** Hein subsequently hired another subcontractor to redo Portage's work.

**{¶9}** On February 24, 2010, Portage filed a complaint against Hein asserting claims for breach of the subcontract and violation of Ohio's Prompt Payment Act. Hein filed a counterclaim for breach of contract and also sought a declaratory judgment that Portage's lien on certain funds be discharged. Portage then amended its complaint adding another count to foreclose on the funds under lien.

**{¶10}** Hein moved for partial summary judgment on Portage's Prompt Pay claim. Portage responded with its own motion for partial summary judgment on the same issue. The trial court denied Hein's motion for summary judgment. It granted Portage's motion only as it related to $2,475 due to Portage and denied it in all other respects.

**{¶11}** The matter proceeded to a bench trial. The trial court found that although Portage completed the work, it did not do so in a manner that complied with the Specifications and Plans applicable to this public project. It found that Portage should have used silicone joint sealant, but instead used polyurethane sealant. It also found that Portage should have cleaned out the joints immediately before installing new sealant, but instead Portage spent over a month cleaning the joints and allowed weeks to pass before the clean joints were sealed. The court further found that the manufacturer would not warrant the work and expert testimony supported Hein's conclusion that the work had to be redone. The court did find that

Hein's application of waterproofing material to certain joints may have contributed to the failure of the caulking material to adhere to the joints properly. The court noted it was undisputed that Hein did not pay Portage.

**{¶12}** The court found that Portage did not prove by a preponderance of the evidence that its work was substantially compliant with the contract. It found that the caulking was not performed in compliance with the contract and was not guaranteed in accordance with the contract. It further found that Hein was compelled to redo Portage's work and Portage refused to assist. The court found Hein owed Portage $18,350.43 as the value of Portage's work. It stated that the $2,475 already awarded in summary judgment was included in this award and that prejudgment interest was owed on that part of the award. It also found that because a good faith dispute arose in this case, no attorney fees were warranted. Accordingly, the trial court entered judgment for Portage in the amount of $18,350.43.

**{¶13}** Portage filed a timely notice of appeal on March 22, 2013.

**{¶14}** Portage raises four assignments of error, the first of which states:

THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT CONSTRUED A CONSTRUCTION CONTRACT TO INCLUDE SEPARATE CONSTRUCTION SPECIFICATIONS NOT MENTIONED IN THE CONTRACT WHERE THE PARTIES AGREE THE CONTRACT WAS A FULL AND FINAL EXPRESSION OF THEIR AGREEMENT.

**{¶15}** Portage asserts that both parties offered testimony that the subcontract, consisting of a one-page purchase order, along with a "change order" constituted the entire contract between them. It argues that despite this testimony, the trial court construed the contract to include the separate specifications included as part of Hein's prime contract with ULSD. Portage argues this was error. It claims the court's stated motivation for doing so, public policy, should not have been a consideration here because the subcontract and change order made up the entire agreement

between the parties. It asserts there was no testimony that the subcontract was ambiguous. Portage argues that if Hein wanted the terms of the prime contract to be included in the subcontract, it should have incorporated it either expressly or by a "flow down" provision, which is common in construction contracts.

**{¶16}** Construing a contract is a matter of law. *Monroe Excavating, Inc. v. DJD &C Dev., Inc.*, 7th Dist. No. 10 MA 12, 2011-Ohio-3169, ¶22, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 374 N.E.2d 146 (1978), paragraph one of the syllabus. When a contract's terms are clear and unambiguous, a court cannot look beyond the plain language of the agreement to determine the rights and obligations of the parties. *Cocca Dev. v. Mahoning Cty. Bd. of Commrs.*, 7th Dist. No. 08MA163, 2010-Ohio-3166, ¶26, citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53, 544 N.E.2d 920 (1989). But if a contract is reasonably susceptible to more than one meaning, then it is ambiguous and parol evidence can be considered. *Id.*, citing *City of Steubenville v. Jefferson Cty.*, 7th Dist. No. 07JE51, 2008-Ohio-5053, ¶22.

**{¶17}** The parol-evidence rule provides that when parties intend a writing to be a final embodiment of their agreement, it cannot be modified by evidence of earlier or contemporaneous agreements that might add to, vary, or contradict the writing. *Bellman v. Am. Internatl. Group*, 113 Ohio St.3d 323, 2007-Ohio-2071, 865 N.E.2d 853, ¶7, citing Black's Law Dictionary (8th Ed.2004) 1149. The parol-evidence rule is meant to prevent a party from introducing extrinsic evidence of negotiations that took place before or while the agreement was being reduced to writing. *Id.*, citing Black's Law Dictionary at 1149. Furthermore, the rule assumes the writing reflects the parties' minds at a point of maximum resolution. *Id.*, citing Black's Law Dictionary at 1150. Therefore, the rule provides that duties and restrictions that do not appear in the writing were not intended by the parties to survive. *Id.*, citing Black's Law Dictionary at 1150.

**{¶18}** In this case, Jeff Hein, the president of Hein Construction, testified that he saw the subcontract between Hein and Portage, approved it, and thought it was a

complete expression of the deal between the parties. (Tr. 80; Pt. Ex. 1). Donovan Hysell, Portage's owner, testified that he felt the subcontract was a clear expression of the deal between the parties. (Tr. 168). Thus, the representatives from both Hein and Portage believed the subcontract was a complete expression of the deal between the parties.

{¶19} But two phrases in the subcontract are ambiguous:

Scope of work: Per your quote dated 6-25-09; Remove and replace EIFS, includes metal flashings & flashing tape, replacement of new EMS *per plans*. Recoat EIFS, blank out and recoat existing EIFS. Painting of existing EIFS. Removal and replacement of caulking at windows, doors and control joints. Clean windows. Remove and replace down spouts. Rubbish removed to on site dumpster. *Received and reviewed addendums*. Work is to begin July 6th. Total $95,000.00.

(Pt. Ex.1; Emphasis added). The terms of the subcontract state that the replacement of the EIFS is to be completed "per plans." However, the subcontract does not identify what "plans" it is referring to. Additionally, the subcontract states that the parties "received and reviewed addendums." But the subcontract is silent as to what the addendums are and the terms of the addendums. Thus, the trial court was able to look beyond the four corners of the subcontract in interpreting it.

{¶20} Jeff Hein testified that when he was interviewing Hysell to be a subcontractor, Hysell reviewed the Plans and Specifications. (Tr. 608-609). He stated that Hysell had the Plans and Specifications before him on the table and they went through the specification book together to see if there were any questions or concerns. (Tr. 609-610). Jeff testified that Hysell told him that he understood the ULSD project would have to conform with the Plans and Specifications. (Tr. 610). Jeff further stated Hysell indicated he understood he had to perform the work according to the Plans and Specifications. (Tr. 610-611).

{¶21} Matthew Hein, Hein's project estimator and coordinator, testified that

during his conversations with Hysell during the bidding process, Hysell indicated that he had reviewed the Plans and Specifications. (Tr. 660-661).

{¶22} Hysell testified that in preparing his bid, he reviewed the Plans for the project. (Tr. 208). However, Hysell admitted that at his deposition he stated that he had reviewed both the Plans and Specifications. (Tr. 212). He claimed he must not have understood the question at the deposition. (Tr. 212-213). Hysell did testify that when he prepared the quote for Hein, he intended to perform the caulking removal and replacement according to the Plans *and* Specifications. (Tr. 221). Additionally, Hysell testified that the subcontract does not provide that Portage was required to perform a mock-up or to give a 20-year warranty. (Tr. 259). Nonetheless, Hysell stated that Portage did two mock-ups and was prepared to give a 20-year warranty. (Tr. 259-260). Additionally, Hysell testified that, per the Specifications, Portage was to prepare the joints by brushing, grinding, blasting, mechanical blasting or a combination of those methods. (Tr. 243). These items, the mock-ups, the warranty, and the joint preparation appear only in the Specifications. (Tr. 259-260).

{¶23} Given this testimony, both Hein and Portage intended for Portage to comply with the Plans and Specifications. Hysell's actions are especially telling. He performed mock-ups per the Specifications. He knew Portage was to prepare the joints in the manner described in the Specifications. And he knew Portage was to provide a warranty in accordance with the Specifications. In addition, the testimony indicated that Hysell reviewed the Plans and Specifications before submitting his proposal to Hein.

{¶24} Thus, the trial court did not err in construing the subcontract to include the terms of the Plans and Specifications.

{¶25} Accordingly, appellant's first assignment of error is without merit.

{¶26} Portage's second assignment of error states:

> THE TRIAL COURT ERRED AS A MATTER OF LAW BY AWARDING HEIN $20,000 AS DAMAGES FOR PORTAGE'S FAILURE TO DELIVER A WARRANTY WHEN THERE WAS NO

COMPETENT, CREDIBLE EVIDENCE SUPPORTING THE DAMAGES
AND THE TRIAL COURT CHARGES THE SAME DAMAGES TWICE.

**{¶27}** The trial court found that Portage breached the subcontract by failing to provide ULSD with a warranty required under the Specifications and Plans. For this breach, the court found Hein was entitled to be reimbursed $20,000.

**{¶28}** Portage contends there was no evidence to support the court's award. It asserts the only evidence was testimony that ULSD withheld $20,000 from Hein's payment. Portage argues there was no evidence that the warranty was worth $20,000, that it cost anybody $20,000 to replace the missing warranty, or that the $20,000 retained by ULSD would not be released to Hein at some later date. Additionally, Portage contends the trial court charged it for the entire cost of the work of the replacement contractor, which included the warranty. Therefore, Portage argues, the trial court charged it twice for the same warranty.

**{¶29}** Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. *C .E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226 (citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 [1984]). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. Id. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986). "A finding of an error of law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal*, 10 Ohio St.3d at 81.

**{¶30}** The testimony as to the warranty was as follows.

**{¶31}** Jeff Hein testified that per the Specifications, Hein was required to

provide ULSD with a 20-year warranty on the EIFS. (Tr. 63-67). He stated that because Portage's caulking work on the EIFS was unacceptable, he could not obtain the warranty for Portage's work. (Tr. 63-67).

**{¶32}** Jeff further testified that because Hein was unable to provide the warranty to ULSD, ULSD refused to release retention money owed to Hein. (Tr. 631). Jeff stated that Hein needed the retention funds to pay its subcontractors, so Hein agreed to pay ULSD $20,000 for them to release the retention money. (Tr. 632). Jeff testified this was a direct result of its dispute with Portage. (Tr. 632-633). Jeff also testified that the offset Hein paid to Buckeye Caulking was $56,996. (Tr. 157).

**{¶33}** Hysell testified there are two types of warranties, special installer's warranties that are provided by the installer and manufacturer's warranties that are provided by the manufacturer of the product. (Tr. 178). He stated he could have provided a special installer's warranty. (Tr. 178-179). Hysell also stated that Hein tried to obtain a warranty from another company, but was refused because Hein failed to pay Portage. (Tr. 192-193).

**{¶34}** Jeremy Greenwood is an architect and project manager at M&G Architects and Engineers. M&G was the architect for the ULSD project. (Tr. 278). Greenwood testified that M&G puts 20-year manufacturer's warranties on all of their projects. (Tr. 278). He testified that the manufacturer requires a pull test before it will issue a 20-year warranty and will not issue the warranty if the pull test fails. (Tr. 321-322). Greenwood stated that as the architect, if the manufacturer does not issue the warranty, he rejects the work. (Tr. 322). He testified that because he was informed by the manufacturer after the pull test that the manufacturer would not issue a warranty, his company rejected the work. (Tr. 327). Greenwood stated the two given reasons why the manufacturer would not issue the warranty were (1) the failed pull test and (2) the material used in the EIFS was urethane-based which only allows a five-year warranty. (Tr. 330-331).

**{¶35}** The trial court found that ULSD withheld $20,000 from Hein due to the

absence of a warranty. The court passed this cost on to Portage. The court also found that Hein paid Buckeye (the company Hein hired to correct Portage's work) $56,996 to do the caulking work. The court passed this cost on to Portage as well. The court arrived at the total amount owed by Hein to Portage for the value of its work as follows:

> $134,174.00 (amount Hein billed ULSD)
> - $20,000.00 (absence of warranty)
> - $19,800.00 (amount Hein already paid Portage)
> - $56,996.00 (amount Hein paid Buckeye to replace Portage's caulking work)
> - $8,687.57 (amount Hein paid Portage's supplier for materials)
> <u>- $10,340.00 (amount Hein paid Buckeye's supplier for materials)</u>
>  $18,350.43 owed by Hein to Portage

**{¶36}** Hein admits in its brief that Buckeye provided the caulking warranty. (Appellee's Brief p. 21). And the testimony was undisputed that Hein paid Buckeye $56,996 for its caulking work. (Tr. 157). Additionally, Jeff testified, and Hein admits, that because Portage was unable to get the required warranty for ULSD, Hein had to pay ULSD a $20,000 cash bond. (Tr. 631-632; Appellee's Brief p. 21).

**{¶37}** We can conclude from the evidence and the trial's court's calculations, the court charged Portage twice for the warranty it did not provide. The court charged Portage $20,000 for the absence of the warranty. It then charged Portage the $56,996 Hein paid to Buckeye, which included providing the warranty. Additionally, the $20,000 was a cash bond to ULSD because, at the time, no warranty had been given. It is reasonable to presume that Hein is entitled to the return of that money now that Buckeye has provided the warranty to ULSD. Therefore, the evidence does not support the trial court's inclusion of the $20,000 figure in its calculations in arriving at the amount Hein owed Portage for the value of its work. Consequently, the award to Portage should be increased by this amount to $38,350.43.

**{¶38}** Accordingly, Portage's second assignment of error has merit.

**{¶39}** Portage's third assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO PERMIT EVIDENCE ON, OR CONSIDERING AN AWARD OF, ATTORNEYS' FEES TO PORTAGE ON PORTGAGE'S SUCCESSFUL CLAIM FOR HEIN'S VIOLATION OF THE OHIO PROMPT PAY ACT DECIDED, AT LEAST IN PART, BY SUMMARY JUDGMENT.

**{¶40}** The trial court granted Portage partial summary judgment in the amount of $2,475 for money due from Hein. The court made no mention of attorney fees in its judgment. In its judgment entry following the trial, the court found that because a good faith dispute arose, it would not award any attorney fees.

**{¶41}** In this assignment of error, Portage asserts that it was entitled to attorney fees on the $2,475 that the trial court awarded it on summary judgment. It contends that R.C. 4113.61(B)(1) mandates an award of attorney fees in such cases. Portage also argues that the trial court erred in rendering judgment in this case without taking evidence on the issue of attorney fees as it said that it would do so.

**{¶42}** R.C. 4113.61 is Ohio's Prompt Pay Act. Pursuant to the Prompt Pay Act, upon application by the subcontractor, the contractor shall pay the subcontractor within ten days after receipt of payment from the owner for the percentage of work completed by the subcontractor. R.C. 4113.61(A)(1)(a). The contractor may withhold amounts that may be needed to resolve disputed liens or claims involving the work performed by the subcontractor. R.C. 4113.16(A)(1).

**{¶43}** R.C. 4113.61(B)(1) provides:

(B)(1) If a contractor * * * has not made payment in compliance with division (A)(1), (2), (3), (4), or (5) of this section within thirty days after payment is due, a subcontractor * * * may file a civil action to

recover the amount due plus the interest provided in those divisions. If the court finds in the civil action that a contractor * * * has not made payment in compliance with those divisions, the court shall award the interest specified in those divisions, in addition to the amount due. Except as provided in division (B)(3) of this section, the court shall award the prevailing party reasonable attorney fees and court costs.

{¶44} R.C. 4113.61(B)(3) goes on to provide that the court shall not award attorney fees under (B)(1) if it determines, after a hearing on the matter, that the payment of attorney fees would be inequitable.

{¶45} In Portage's summary judgment motion it asserted, in part, that it was undisputed that Hein owed it $2,475.05. This was part of Portage's Prompt Pay claim. In Hein's motion for summary judgment, Hein stated it tendered that amount to Portage. The court found the conditional tendering was not tantamount to payment.

{¶46} Pursuant to R.C. 4113.61(B), Portage was entitled to reasonable attorney fees in its recovery of the $2,475. The court would have the option of denying attorney fees if it found, after a hearing, that payment of attorney fees would be inequitable. But the court never held a hearing on the matter.

{¶47} At the conclusion of the trial, Portage's counsel asked the court how it planned on handling the testimony on attorney fees. (Tr. 854). The court replied: "We can do it another day by affidavit." (Tr. 854). There does not appear to be any affidavits on the issue of attorney fees. The court's comment at the end of the trial is the last mention of attorney fees. This is likely because the court found in its judgment entry that because "a good faith dispute arose, no attorneys' fees are ordered."

{¶48} But the court was obligated, pursuant to the statute, to hold a hearing on the issue of attorney fees because it awarded Portage $2,475 of undisputed fees under the Prompt Pay Act. Therefore, this matter will be remanded to the trial court to hold a hearing on the issue of attorney fees under the Prompt Pay Act.

{¶49} Accordingly, Portage's third assignment of error has merit.

{¶50} Portage's fourth assignment of error states:

THE TRIAL COURT ERRED AS A MATTER OF LAW BY FAILING TO ENTER A JUDGMENT ENTRY IN PROPER FORM WITH PROPER CONTENT.

{¶51} Portage argues here that the trial court did not enter a judgment that resolved all of the parties' claims. It states that the judgment entry fails to mention either its breach of contract or Prompt Pay Act claims and fails to mention pre- or post-judgment interest. It further contends even though the court awarded pre-judgment interest on the $2,475 awarded on summary judgment, it failed to award post-judgment interest on this amount as is required by the Prompt Pay Act. Finally, Portage takes issue with the fact that the court did not assign the payment of costs to Hein.

{¶52} In its judgment entry, the trial court noted that Portage claimed damages against Hein under a breach of contract claim and under the Prompt Pay Act. The court then found that Hein owed Portage $18,350.43 "as reasonable payment for value conferred by Portage's work." The court stated that the $2,475 that it previously awarded to Portage "is included in the $18,350.43." The $2,475 the court referred to was the award it made on summary judgment for Portage's Prompt Pay Act claim. Thus, the remaining balance of Portage's award, or $15,875.43, was the award on Portage's breach of contract claim.

{¶53} As to pre- and post-judgment interest, the court found that Portage was entitled to pre-judgment interest on the $2,475 it previously awarded on summary judgment. The court does not mention post-judgment interest nor does it mention the rate of interest. The Prompt Pay Act provides that the contractor *shall* pay the subcontractor interest in the amount of 18 per cent per annum of the payment due, beginning on the eleventh day following the receipt of payment from the owner and

ending on the date of full payment. R.C. 4113.61(A)(1). The court should have included this statutorily-required interest on the $2,475 portion of the award.

**{¶54}** The court makes no mention of costs. The court likely did not assign the payment of costs to Hein because of the good faith dispute that it found.

**{¶55}** Accordingly, Portage's fourth assignment of error has merit in part.

**{¶56}** In sum the trial court did not err in considering extrinsic evidence of the parties' agreement. It did err in determining that Portage owed Hein for a warranty that was not delivered. And the court erred in failing to hold a hearing on the issue of attorney fees. Finally, the court erred in failing to include the 18 percent statutorily-required interest on the Prompt Pay Act portion of the award of $2,475.

**{¶57}** Therefore, for the reasons stated above, the trial court's judgment is hereby reversed. The matter is remanded to the trial court so that it may enter a new judgment in the amount of $38,350.43 as the amount Hein owes to Portage for the work performed. Additionally, the trial court is to hold a hearing on the issue of attorney fees. Finally, the court is to include the 18 percent statutorily-required interest on the Prompt Pay Act award in its new judgment entry.

Vukovich, J.,
Waite, J.,

APPROVED:

_____
Gene Donofrio, Judge