[Cite as *Xtreme Elements, L.L.C. v. Foti Contracting, L.L.C.*, 2017-Ohio-254.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| XTREME ELEMENTS, LLC, | : | **O P I N I O N** |
| Plaintiff-Appellant, | : | |
| - vs - | : | **CASE NO. 2016-L-043** |
| FOTI CONTRACTING, LLC, et al., | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Lake County Court of Common Pleas, Case No. 2014 CV 000639.

Judgment: Affirmed in part, reversed in part, and remanded.

*Matthew D. Gurbach, Thomas O. Crist,* and *Anthony C. Sallah,* Benesch, Friedlander, Coplan & Aronoff LLP, 200 Public Square, Suite 2300, Cleveland, OH 44114 (For Plaintiff-Appellant).

*John K. Lind, Jr.,* 3185 Belvoir Boulevard, Shaker Heights, OH 44122 (For Defendant-Appellee).

DIANE V. GRENDELL, J.

{¶1}   Plaintiff-appellant, Xtreme Elements, LLC, appeals from the Judgment Entry of the Lake County Court of Common Pleas, ruling in favor of defendant-appellee, Foti Contracting, LLC, on various claims following a trial.  The issues to be determined in this case are whether prejudgment interest must be paid under the Prompt Payment Act when the parties present conflicting testimony about the soundness of certain construction work and there is a dispute over whether payment was withheld in good

faith, and whether the court erred by failing to hold a hearing on attorney's fees when awarding prejudgment interest for a claim pursuant to the Prompt Payment Act. For the following reasons, we affirm in part and reverse in part the decision of the lower court and remand for further proceedings consistent with this opinion.

{¶2} On March 18, 2014, Xtreme filed a Complaint against Foti and Associated Associates in the Lake County Court of Common Pleas, which was a refiling of a 2012 Complaint. The Complaint stated that Foti had a contract with Southington Local School District for the construction of a school facility and that Xtreme had entered into three subcontracts with Foti in August and October 2009 to perform concrete work for that project. Xtreme stated that it had completed all work under the subcontracts and that Foti had raised baseless complaints for some work and withheld partial payment in the amount of $91,230. Count One was for Breach of Contract for Foti's failure to pay the amount owed. Count Two was raised under the Prompt Payment Act, for Foti's failure to pay Xtreme "within 10 days of receipt of funds associated with the subcontractor's work." Count Three was for Breach of Contract against Associated, a concrete supplier, for failing to timely furnish materials and Count Four was for Indemnity against Associated.

{¶3} Foti filed its Answer and Counterclaim on April 11, 2014, and raised a counterclaim for Breach of Contract.

{¶4} On May 8, 2014, Xtreme filed its Answer to Counterclaim.

{¶5} Following the filing of an unsuccessful Motion to Dismiss, Associated filed its Answer, Counterclaim, Cross-claim and Third-Party Complaint.

2

{¶6} A trial to the court was held on multiple dates in February through November of 2015. The following pertinent testimony and evidence were presented:

{¶7} Xtreme entered into three subcontracts with Foti, the general contractor, in September and October of 2009 to perform concrete work on the Southington School District construction project, the value of which totaled over $800,000. Work performed included, in part, inside foundation, a back door entryway, and sidewalks.

{¶8} Hugh Lockhart, Xtreme's owner, testified regarding issues that arose while working on this project. In June 2010, Xtreme completed a sidewalk, also referred to as an island, near the ball field, with ready-mix concrete supplied by Associated Associates. During the pour, an issue with a cold joint forming arose. Cold joints can occur when concrete starts to dry or set before additional concrete is added, potentially causing a separation in the concrete. Lockhart testified that Xtreme was asked by Scaparotti Construction, Southington's representative, to fix the cold joint issue by "rubbing it out," which was done. On July 5, 2011, Paul Gillespie, the project manager from Foti, sent an e-mail stating that the sidewalk would need to be replaced. In an e-mail response sent at his request on July 11, 2011, Lockhart indicated that "if a third-party testing company core drills the sidewalk and determines that it is not structurally sound then Xtreme would replace it." He believed a core drill, taking a sample to show the inside of the concrete, would demonstrate if there was any separation and indicate the strength of the concrete. He did not believe the concrete island/sidewalk needed to be removed since it was structurally sound.

{¶9} A triangular area of concrete completed with a "broom finish" was poured near the back door of the school in the spring of 2011 and was also the subject of a

3

dispute. Lockhart testified that the broom finish, typically used to give concrete traction, was completed adequately. On June 15, 2011, he received an e-mail regarding this area, from Paul Gillespie, a project manager for Foti, asking to "send me something regarding the concrete that needs to be replaced at the back of the building." Lockhart responded "Not going too (sic), thanks," since he did not believe the work needed to be replaced. He believed that Foti still owed Xtreme a total balance of $87,650.20.

{¶10} Richard Dopatka, a project manager for Scaparotti Construction, testified that money was withheld for the "broom finish" area of the concrete. He expressed concern with the appearance/aesthetics of the concrete work. $20,000 was withheld for roughly a year, with a joint decision made by several parties to wait during the winter to determine if it would be "structurally sound." It was then decided that the work was acceptable and the funds were released to Foti.

{¶11} Regarding the sidewalk/concrete island by the baseball field, it was ultimately replaced since, according to Dopatka, cold joints are not acceptable pursuant to industry standard. The request to take core samples was rejected as there was already evidence that there was a cold joint, which could cause the concrete to deteriorate over time.

{¶12} Jason Cheshire, the foreman for Xtreme Elements, testified that the triangle pour and finish were completed adequately, although he believed Lucio Velotta, Scaparotti's superintendent, said something the next day about the area being "a little rough." Regarding the ball field sidewalk pour, Cheshire had issues with the concrete supplier, Associated Associates, being "excessively late," which led to the formation of the cold joint. Patching of the sidewalk was subsequently completed by Xtreme, which

4

he believed was an acceptable remedy. He opined that the sidewalk was functional, sound, and did not need replaced.

**{¶13}** James Franz, the project superintendent for Foti Contracting, was present during the pour of the sidewalk and saw that the first layer of concrete started to set before the second layer was poured, causing the formation of the cold joint. Scaparotti was adamant that the sidewalk needed to be removed but Xtreme would not replace it and another subcontractor had to be hired. He did not believe that the concrete was structurally sound.

**{¶14}** Regarding the broom finish area, he said it "looked terrible" but there was an agreement to wait and see how the area "wears off."

**{¶15}** Paul Gillespie also testified regarding the broom finish area that it was "extremely rough" and there was an agreement with Scaparotti that they would withhold the money and see if it lasted the winter. Regarding the sidewalk, he explained that Xtreme refused to fix it and that it cost $19,723.99 to remove and replace.

**{¶16}** Gillespie admitted that money was still owed to Xtreme but expressed concern over the dispute between Associated and Xtreme. He did not know who all of the money should be paid to and believed this should be settled by the court. He admitted that some portion of the money should have been paid to Xtreme but was not sure why it was not, noting that Xtreme may not have sent a final invoice.

**{¶17}** Harold Joslin, the former owner of Associated, stated that he would have done a core drill on the sidewalk to determine whether there was a cold joint or just a "cosmetic imperfection." He did not believe it made sense to tear out the sidewalk.

**{¶18}** On March 30, 2016, the trial court issued its Judgment Entry. It found, in pertinent part, that Foti was unjustified in withholding $19,723.99 for the cold joint and in removing/replacing the sidewalk, and that a core sample should have been taken to determine whether a cold joint existed. It held that interest under the Prompt Payment Act should not be awarded, however, since the money was withheld to resolve a dispute involving the work performed.

**{¶19}** Regarding the broom finish work, the court found that although there was initially a dispute, a decision was made to ultimately accept the work and Foti was not justified in continuing to withhold the payment. Thus, Xtreme was entitled to interest under the Prompt Payment Act from November 10, 2012, shortly after the money for that work had been paid by the owner to Foti. Relating to this claim, the court determined that an award of attorney fees would be inequitable. The court rendered judgment in favor of Xtreme against Foti in the amount of $56,651.30, with 18% interest to be paid on the $25,921.62.

**{¶20}** Xtreme timely appeals and raises the following assignments of error:

**{¶21}** "[1.] The trial court's holding that Foti did not violate the Prompt Payment Act, R.C. § 4113.61(A)(1), when it withheld funds relating to the cold joint was against the manifest weight of the evidence.

**{¶22}** "[2.] The trial court erred as a matter of law by denying attorney's fees to Xtreme before holding a separate hearing on the payment of attorney's fees pursuant to R.C. § 4113.61(B)(3).

{¶23} "[3.] The trial court committed prejudicial error when it held that Xtreme was not entitled to attorney's fees under Ohio's Prompt Payment Act, R.C. § 4113.61(B)(1), because to do so would be inequitable."

{¶24} In its first assignment of error, Xtreme argues that the trial court's determination that Foti was not liable under the Prompt Payment Act for withholding funds related to the cold joint is against the weight of the evidence, since the funds were not withheld in good faith.

{¶25} "When reviewing a civil appeal from a bench trial, an appellate court utilizes a manifest-weight standard of review." *Simoudis v. Frenchko*, 11th Dist. Trumbull No. 2014-T-0065, 2014-Ohio-5475, ¶ 12. When reviewing the weight of the evidence, the reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered." (Citation omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20. "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶26} Pursuant to the Ohio Prompt Payment Act:

> If a subcontractor * * * submits an application or request for payment or an invoice for materials to a contractor in sufficient time to allow the contractor to include the application, request, or invoice in the contractor's own pay request submitted to an owner, the contractor, within ten calendar days after receipt of payment from the owner for

7

improvements to property, shall pay to the * * * [s]ubcontractor, an amount that is equal to the percentage of completion of the subcontractor's contract allowed by the owner for the amount of labor or work performed.

R.C. 4113.61(A)(1)(a). The contractor may reduce the amount paid to the subcontractor "by any retainage provision contained in the contract, invoice, or purchase order between the contractor and the subcontractor" and may also "withhold amounts that may be necessary to resolve disputed liens or claims involving the work or labor performed or material furnished by the subcontractor." R.C. 4113.61(A)(1)(b).

{¶27} If the contractor fails to comply with these provisions, the contractor must pay the subcontractor, "in addition to the payment due, interest in the amount of eighteen per cent per annum of the payment due, beginning on the eleventh day following the receipt of payment from the owner and ending on the date of full payment of the payment due plus interest to the subcontractor." *Id.*

{¶28} While a contractor is required to make prompt payment to a subcontractor, this money can be withheld in the event of a dispute. Courts have determined that prejudgment interest under R.C. 4113.61 is not warranted when the contractor withholds the money "in good faith" on a disputed claim. *Mike McGarry & Sons, Inc. v. Marous Bros. Constr., Inc.*, 11th Dist. Lake No. 2009-L-056, 2010-Ohio-823, ¶ 44; *Creative Concrete v. D&G Pools*, 7th Dist. Mahoning No. 07 MA 163, 2008-Ohio-3338, ¶ 45, citing *Masiongale Elec.-Mechanical, Inc. v. Constr. One, Inc.,* 102 Ohio St.3d 1, 2004-Ohio-1748, 806 N.E.2d 148, ¶ 10.

8

**{¶29}** The trial court held that Foti was unreasonable in requiring that the sidewalk be torn out without performing a core sample, which would have allowed it to determine whether the concrete bonded or fused, since it was impossible to see what occurred inside the concrete island/sidewalk. It also found that although there were aesthetic concerns raised, Xtreme had remedied this by rubbing out the lines.

**{¶30}** The fact that these findings are contrary to Foti's position that the sidewalk should have been removed does not mean that Foti failed to act in good faith. Testimony raised legitimate concerns about both the structure and appearance of the sidewalk. As the court found, "Foti alleged that one could see the cold joint, and it was evident when you looked at it from the side, so that doing a core sampling would not give one any more information than one already had." Both Dopatka and Franz believed it was apparent that a cold joint existed and this was not seen to be acceptable by Foti or Scaparotti. The court's conclusion to the contrary does not mean Foti acted in bad faith. *Consortium Communications v. Cleveland Telecommunications, Inc.*, 10th Dist. Franklin No. 97APG08-1090, 1998 WL 63538, 3 (Feb. 10, 1998) ("[t]he fact that judgment was ultimately made in favor of appellant, and appellee ended up owing appellant for additional charges does not mean appellee could not, in good faith, dispute such charges and withhold payment on such"). There was a legitimate dispute between the parties as to what action should have been taken.

**{¶31}** Also, Foti's decision to remove and pay for replacement of the sidewalk evidenced a legitimate belief that it needed to be replaced. There would be little reason to incur this expense and create a potential dispute with Xtreme if there was not at least a good faith belief that an unacceptable cold joint existed in the sidewalk. Given these

9

facts, the trial court's decision not to award prejudgment interest under the Prompt Payment Act was not against the weight of the evidence.

**{¶32}** The first assignment of error is without merit.

**{¶33}** In its second assignment of error, Xtreme argues that the trial court misapplied the law by failing to hold a hearing on attorney fees, which it was required to do under the Prompt Payment Act.

**{¶34}** In some types of cases involving prejudgment interest, such as the payment of interest under R.C. 1343.03, the Supreme Court has held that the trial court "has the discretion to determine the nature of the evidentiary hearing to be held." *Pruszynski v. Reeves*, 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, ¶ 12. However, to the extent that this case involves the "interpretation and application of" R.C. 4113.61, a de novo standard of review will be applied. *Dennison v. Lake Cty. Commrs.*, 11th Dist. Lake No. 2013-L-067, 2014-Ohio-4294, ¶ 32.

**{¶35}** In a prompt payment action, "the court shall award the prevailing party reasonable attorney fees and court costs," unless "the court determines, following a hearing on the payment of attorney fees, that the payment of attorney fees to the prevailing party would be inequitable." R.C. 4113.61(B)(1) and (3).

**{¶36}** Xtreme was a prevailing party under the Prompt Payment Act as to the "broom finish"/back entrance claim. "A 'prevailing party' is one in whose favor the decision or verdict is rendered and judgment entered." *Mike McGarry & Sons*, 2010-Ohio-823, at ¶ 45. The trial court held that payment was improperly withheld by Foti for this work since November 10, 2012, and awarded the amount owed plus 18% interest under the Prompt Payment Act.

**{¶37}** The issue, then, is whether attorney fees could be denied without first holding a hearing. As noted above, the clear language of R.C. 4113.61(B)(3) states that attorney fees must be awarded unless found to be inequitable "following a hearing on the payment of attorney fees." In this case, no separate hearing was held in relation to attorney fees. Rather, the trial court ruled on this issue following the trial, based on witnesses' trial testimony. The statute does not provide for such a ruling. If the trial was sufficient to satisfy the hearing requirement, the inclusion of the specific provision to hold a "hearing on the payment of attorney fees" before determining that such an award would be inequitable would be rendered meaningless. *In re Estate of Centorbi*, 129 Ohio St.3d 78, 2011-Ohio-2267, 950 N.E.2d 505, ¶ 13 (a court may not construe a statute in a manner that renders a provision meaningless).

**{¶38}** A conclusion that a separate hearing must be held is consistent with one of the only cases that addresses this issue in Ohio, *Portage Exteriors, Inc. v. Hein Constr., Inc.*, 7th Dist. Belmont No. 13 BE 5, 2014-Ohio-2930. In *Portage Exteriors*, following a trial on the issue of insulation work, the trial court awarded prejudgment interest on a portion of the claim due to a violation of the Prompt Payment Act and found that "because a good faith dispute arose in this case, no attorney fees were warranted." *Id.* at ¶ 12. The appellate court found this to be an error, since the trial court "was obligated, pursuant to the statute, to hold a hearing on the issue of attorney fees" after issuing an award under the Prompt Payment Act. *Id.* at ¶ 48.

**{¶39}** While Foti argues that the trial was sufficient to constitute a "hearing on the payment of the attorney fees," neither the facts in the record, nor the plain language of the statute, support such a conclusion in this case. Even if the trial could take the

11

place of a separate hearing, the parties should be advised of this fact. The Ohio Supreme Court has addressed the requirements for a hearing when the statute does not specify the nature of the hearing to be held, in the context of an award of prejudgment interest. In *Pruszynski,* 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, the Supreme Court held that the trial court has "the discretion to determine the nature of the evidentiary hearing to be held, as it is in the best position to select the kind of evidence necessary to make the findings" required for awarding prejudgment interest. *Id.* at paragraph two of the syllabus. To satisfy the requirement that a "hearing" be held, however, the trial court "must set a date certain for an evidentiary hearing." *Id.* at paragraph one of the syllabus. A similar analysis can be applied in the present matter, where the pertinent statute does not define the term "hearing."

{¶40} In this case, no discussions appear on the record prior to trial relating to the attorney fees issue or stating that the issue would be litigated during the trial rather than at a separate evidentiary hearing. To the contrary, no evidence regarding attorney fees was presented by Xtreme and counsel for Xtreme conveyed during his opening argument that, at the conclusion of trial "a subsequent hearing on attorney fees, which Xtreme is statutorily entitled to in this case under the statute, would be established at a later hearing." (Sic.) This evidences that counsel was under the impression, given the language of the statute, that it would have an opportunity to present evidence in favor of its position on attorney fees at a later time, if interest was awarded pursuant to the Prompt Payment Act.

{¶41} Given the trial court's partial justification for its determination that attorney fees would be inequitable since they related to only a third of the total judgment

12

requested, testimony about the money expended on this portion of the claim could have impacted the equity decision had Xtreme been given a hearing to present the evidence, thus prejudicing Xtreme. Although Foti argues that this could and should have been presented at the trial, comparing the request for attorney fees to an affirmative defense, this is inconsistent with the language of the statute and would be unfair to Xtreme in this case.

{¶42} Based on the foregoing, the trial court should have held a hearing on the payment of attorney fees before ruling that an award of fees would be inequitable. We remand this matter to the trial court for the limited purpose of holding an evidentiary hearing on the issue of attorney fees. R.C. 4113.61(B)(3). This hearing shall be held within 60 days of this court's judgment.

{¶43} The second assignment of error is with merit.

{¶44} In its third assignment of error, Xtreme argues that the court erred in finding that an award of attorney fees would be inequitable.

{¶45} Given our resolution of the previous assignment of error and the requirement that the trial court hold a hearing to consider whether an award of attorney fees is warranted, this assignment of error is moot.

{¶46} The third assignment of error is moot.

{¶47} For the foregoing reasons, the Judgment Entry of the Lake County Court of Common Pleas is affirmed in part, reversed in part, and this matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against the parties equally.

COLLEEN MARY O'TOOLE, J., concurs,

13

CYNTHIA WESTCOTT RICE, P.J., dissents with a Dissenting Opinion.

_____

CYNTHIA WESTCOTT RICE, P.J., dissents with a Dissenting Opinion.

{¶48} For the reasons that follow, I agree with the sound and well-reasoned decision of the trial court and would affirm. The majority concludes that a remand is necessary for the trial court to hold an evidentiary hearing on the issue of attorney fees. Because the trial court made the necessary finding that "awarding attorney fees would be inequitable as there existed a good faith dispute as to the amount owed to Extreme," a remand for a hearing on the issue is a waste of time and judicial resources. I respectfully dissent.

{¶49} Xtreme assigns as error the trial court's failure to hold a separate hearing pursuant to the Prompt Payment Act, R.C. 4113.61(B)(3). The majority states that neither the facts in the record, nor the plain language of the statute, support a conclusion that the trial in this case was sufficient to constitute a "hearing on the payment of the attorney fees." I disagree with this conclusion.

{¶50} During closing arguments, Extreme argued for an award of attorney fees against Foti for the alleged violation of the Prompt Payment Act citing *Masiongale Elec.-Mech., Inc. v Construction One, Inc.*, 102 Ohio St.3d 1, 2004-Ohio-1748. In that case, the Supreme Court of Ohio observed:

> Failure to comply with [The Prompt Payment Act] obligates a contractor to pay interest on the overdue payment at a rate of 18 percent per annum. R.C. 4113.61(A)(1) and (B)(1). A subcontractor also may file a civil action to recover the amount due and the

14

statutory interest. R.C. 4113.61(B)(1). If the court determines that the contractor has not complied with the prompt-payment statute, the court must award the subcontractor the statutorily prescribed interest. *Id.* In addition, the prevailing party is entitled to recover reasonable attorney fees, unless such an award would be inequitable, together with court costs. R.C. 4113.61(B)(1) and (B)(3). *Masiongale*, *supra*, at ¶17.

{¶51} Although Xtreme requested reasonable attorney fees, it never mentioned or sought a separate hearing to determine whether the award of attorney's fees would be inequitable.

{¶52} Moreover, in their Proposed Findings of Fact and Conclusions of Law, Xtreme also cited R.C. 4113.61(B)(3), requesting that the court determine that "the prevailing party is entitled to recover reasonable attorney fees, unless such an award would be inequitable, together with court costs." It further asked the court to make the R.C. 4113.61(B)(3) conclusion that "Xtreme is entitled to its reasonable attorneys' fees, as there is no proffered justification for Foti's withholding of undisputed money owed to Extreme." Xtreme did not mention or request a separate hearing for the court to conduct an analysis as to whether an award of attorney fees would be inequitable.

{¶53} A "proposed findings of fact and conclusions of law" is a request for the court to adopt a party's factual and legal determinations. And, pursuant to Civ.R. 52, "'[a] trial court may adopt as its own a party's proposed findings of fact and conclusions of law if it has thoroughly read the document to ensure that it is completely accurate in fact and law.'" *Mentor v. CSX Transp., Inc.*, 11th Dist. Lake Nos. 2003-L-099 and 2003-L-100, 2005-Ohio-3386, ¶41, quoting *Adkins v. Adkins*, 43 Ohio App.3d 95 (4th Dist.1988). Here, Xtreme included the R.C. 4113.61(B)(3) request for reasonable

15

attorney fees in its proposed findings and conclusions. The trial court, however, did not adopt its legal conclusion.

{¶54} Xtreme put the issue of whether an award of attorney fees would be equitable, pursuant to R.C. 4113.61(B)(3), before the trial court. The trial court concluded such an award would be inequitable, under the circumstances. Xtreme did not request or claim it was entitled to a separate hearing on the issue. Xtreme should not be rewarded with a "second bite" at the proverbial apple when it failed to give the trial court the opportunity to consider whether it was entitled to a separate hearing. By failing to request or argue it was entitled to a separate hearing in its proposed findings, I would hold Xtreme waived the issue on appeal.

{¶55} Furthermore, the trial court concluded an award of attorney fees would be inequitable because there was a good faith dispute regarding what Xtreme was owed. In light of the trial court's substantive conclusion on the issue, remanding the matter for a separate hearing would be unnecessary and redundant.

{¶56} In view of the foregoing, I respectfully dissent.